**BERWICK GRAIN COMPANY, INC. and David McCrery, Jr., Plaintiffs–Appellants,**

v.

**ILLINOIS DEPARTMENT OF AGRICULTURE, Rebecca Doyle, Thomas E. Jennings, et al., Defendants–Appellees.**

No. 96–2838.

United States Court of Appeals, Seventh Circuit.

Argued April 25, 1997.

Decided June 16, 1997.

As Amended on Denial of Rehearing July 3, 1997.

John H. Bisbee (argued), Macomb, IL, Gregg N. Grimsley, Carter, Grimsley & Rasmussen, Peoria, IL, for Plaintiffs–Appellants.

Jerald S. Post (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, Defendants–Appellees.

Before POSNER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The appellants, seeking monetary and injunctive relief pursuant to 42 U.S.C. § 1983, allege that the Illinois Department of Agriculture (the "Department") violated their due process rights in 1987 when it revoked Berwick Grain Company's grain dealer's and warehouse licenses and again in 1991 when it denied similar licenses to A Grain Company, Inc. ("AGC"), both of which are managed by David McCrery. The district court granted the defendants' motion for summary judgment. We affirm.

## I.

The events giving rise to this suit date from the fall of 1986 when Berwick applied to the Department for renewal of its grain dealer's and warehouse licenses. Berwick was experiencing financial difficulties due at least in part to the decision of its long-term lender, Exchange National Bank, to remove itself from the agricultural loan business. As a result, the Department notified Berwick that it was not in compliance with the Illinois Grain Dealers Act and Public Warehouse and Warehouse Receipts Act, which require licensees to maintain a current asset-to-liability ratio no less than one. A hearing to show cause why Berwick's application should not be denied was scheduled for November 13.

Thus began a series of hearings that were repeatedly continued to permit Berwick to get its affairs in order. At a hearing held on December 16, Berwick was granted a sixty-five-day extension of its licenses on certain conditions, among them that Berwick submit to inspection by Department examiners. The Department reserved the right to take any action it might deem appropriate in light of its audit, and McCrery was warned that Berwick's assets would be liquidated if it did not secure financing by the end of the sixty-five days. After the Department's audits revealed bookkeeping and grain quality problems, McCrery agreed to additional restrictions at a February 5, 1987 hearing. On March 9, citing inadequate financial ratios, grain quality shortages, and funds insufficient to guarantee payment to producers, the Department notified Berwick that the hearings had not "produced results satisfactory to

the Department" and that the company's warehouse and dealer's licenses were suspended. At the subsequent show cause hearing, held March 19, McCrery and Berwick were granted yet another reprieve. On the basis of representations by McCrery's attorney, counsel in this action, that Berwick was about to secure new financing, the Department continued the suspension of Berwick's licenses for forty-five days, but reserved the right to call a revocation hearing on twenty-four hours' notice.

The financing did not materialize. One potential lender, United Agri Products Financial Services ("UAP"), had offered a revolving line of credit contingent on a successful audit of Berwick and "a satisfactory resolution of issues with ... the Illinois Department of Agriculture." That offer was rescinded, however, after the Department refused to guarantee to UAP that Berwick's licenses would be approved and a UAP "preaudit" uncovered a host of problems with Berwick's operations. Consequently, the Department notified Berwick on April 9 that it was still not in compliance with the statutory financial requirements and that a show cause hearing would be convened April 16. On that date, a Department hearing officer revoked Berwick's grain dealer's and warehouse licenses. The hearing officer also ordered the Department's Bureau of Warehouses to take control of Berwick's facilities and to liquidate its assets for the benefit of creditors.

Although McCrery did not pursue administrative remedies, his quest for a grain dealer's license did not end. In 1990, he applied for a license as president of A Grain Company, Inc. ("AGC"), a wholly owned subsidiary of Berwick. By letter, the Department denied the application on the ground that "the applicant does not have the qualifications and background essential to conduct a grain dealer's business," and a hearing officer subsequently upheld this determination. (McCrery's wife attended the hearing alone and represented that she would run AGC, but the hearing officer—the same who had presided over the Berwick hearings—did not believe her.) On February 15, 1991, the Department Director (defendant Doyle) de-

nied McCrery's request for reconsideration. Noting that more than $700,000 worth of unsatisfied creditors' claims had remained after liquidation of Berwick, the Director determined, in words borrowed from the relevant statutes, that AGC's officers "are not of good business reputation and do not have the qualifications and background essential for the conduct of a grain dealers business."

The plaintiffs (collectively, "McCrery") commenced this action in December 1991—too late in the district court's estimation. Applying Illinois' two-year statute of limitations for personal injury actions, the district court held that Counts I and III, relating to the Berwick proceedings, were time barred. With respect to Count II, which arose out of the denial of AGC's license application, the district court concluded that McCrery had failed to raise an issue of material fact as to whether he had been denied due process. Accordingly, the district court granted the defendants' motion for summary judgment.

## II.

■ This appeal presents no legal or factual question that can afford relief to the plaintiffs. With respect to the denial of the license to Berwick (Counts I and III), the gravamen of McCrery's complaint is twofold: (1) that the true reason for the license revocation was not, as the Department indicated, Berwick's failure to maintain the required debt-to-asset ratio, but rather "personal antipathy" on the part of Department officials, and (2) that the Department, in order to prevent renewal of the licenses, communicated "false and defamatory" information to UAP. The Department's actions, according to McCrery, violated his due process rights by denying him notice and an opportunity to be heard.

In the district court's view, McCrery's insurmountable hurdle was that, although Berwick's licenses were revoked in April 1987, he did not file suit until December 1991, well beyond the applicable two-year statute of limitations. McCrery maintains that in 1989 he did not yet have information raising any suspicion of wrongdoing on the part of Department officials. Invoking various doctrines to defeat the time bar, McCrery insists that it was not until 1991, when the Department denied AGC's license application on the basis of "bad business reputation," that "Berwick got wind that matters other than its inability to attain the financial ratios played a part in the decision in April, 1987 to revoke Berwick's license." In this regard, it does not help McCrery that in 1989, during the deposition of a former UAP official, Lloyd Bettis, in a separate litigation against the Exchange National Bank, McCrery's counsel remarked, "Are you suggesting I ... ought to have a 1983 suit going against the Department of Agriculture?" Nevertheless, we can grant that as of 1989 McCrery had no grounds to suspect misconduct on the part of Department officials. The dispositive factor in our view is that he has yet to adduce any evidence tending to show that the named defendants did anything improper.[1]

At oral argument, McCrery's counsel drew our attention to the following statement in his reply brief: "No document or statement in the record reflected that any UAP official said, found or presented a document indicating that any one of its audits revealed any problem adversely reflecting on Berwick." Counsel now realized that this statement was incorrect, for he had discovered the previous night a memorandum in the record suggesting that UAP's own audit had uncovered problems with Berwick's operations. Apparently believing the viability of McCrery's appeal to turn on whether UAP independently decided to deny Berwick financing or did so based on information supplied by the Department, counsel expressed his apologies for his "egregious misstatement." This *mea culpa* was unnecessary: the appeal lacked merit even assuming the statement's accuracy. We nevertheless granted counsel's motion to strike the offending language and granted

---

1. We note that the Department is not subject to suit under § 1983; nor, insofar as McCrery requests damages, are the named defendants in their official capacities. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Lett v. Mag-* *nant,* 965 F.2d 251, 255 (7th Cir.1992). Yet because McCrery seeks injunctive relief against the defendants in their official capacities and damages against them in their individual capacities, we address the merits of his suit.

him leave to file some sort of motion, the import of which was not entirely clear.

We now have before us counsel's "Motion Pursuant to Rule 10(e) F.R.A.P. and Circuit Rule 10(b) for Order That the Supplemental Evidence Attached Hereto Overcomes Berwick's Misunderstanding and Misstatement of the Record and Permits the Record Before the Court to Allow Berwick to Survive Summary Judgment Relative to the Existence of Fraud Necessary to Berwick's Due Process Claim; Alternatively, Motion to Remand to the District Court for the Same Purpose." It is denied. The appellate stage of the litigation process is not the place to introduce new evidentiary materials. *See Liao v. Tennessee Valley Authority,* 867 F.2d 1366, 1370 (11th Cir.1989) (Rule 10(e) "contemplates correction of a record to reflect what occurred below; it does not permit a new or different record to be created."). To grant such motions not only would promote inefficient allocation of judicial resources, but also would deny non-movants fair notice of the record they are to confront on appeal. Given the nature of this suit, which alleges that McCrery did not have notice of the Department's true grievances, it is ironic that his counsel now seeks to enlarge the record with materials that were not submitted to the district court.

The patent inappropriateness of the motion is troubling; more so is what the motion reveals about this suit as a whole. In his effort to demonstrate that his new submissions "will not alter the proceedings or the record on which the district court entered summary judgment from which this appeal was taken and will not alter the issue before this court as to whether the district court correctly applied the statute of limitations," McCrery's counsel points to two pieces of evidence "which do appear of record": the "affidavit and comments" of Schroeder, a former Department investigator, and the Bettis deposition.

The Schroeder document to which counsel refers us, dated July 19, 1993 and entitled "Conversation between John H. Bisbee [counsel for McCrery], Carl Schroeder, and Dave McCrery," appears to be a transcript of an interview with Schroeder. It is not in the form of either affidavit or deposition, and the district court, in its order granting the defendants' summary judgment motion, correctly held that "in its current form, it is not admissible under Federal Rule of Civil Procedure 56(e)." Assuming "for purposes of argument" that the plaintiffs could produce a proper affidavit duplicating the substance of the interview, the district court observed that "Schroeder never suggests that he reported false information to the Department" and that "there is nothing in the record which indicates that the Department relied upon the information Schroeder compiled when deciding whether to grant or deny Berwick's applications." After entering summary judgment for the defendants but before denying McCrery's motion to alter or amend its judgment, the district court permitted McCrery to file out of time an affidavit of Schroeder attesting to the authenticity of the interview transcript. Perhaps the court's liberality stemmed from its view that the Schroeder interview could not materially alter the record. At any rate, we need not consider whether the Schroeder transcript-plus-affidavit now comports with Rule 56(e), for we agree with the district court that it does not support an inference of wrongdoing.

Finally, it is remarkable that McCrery's counsel now points to the 1989 Bettis deposition as being sufficient to raise an issue of material fact. It was during the Bettis deposition that McCrery's counsel in the instant case, Mr. Bisbee, asked whether he should "have a 1983 suit going against the Department of Agriculture." In order to overcome the statute of limitations defense, counsel argues in this court, as he did in the district court, that he would have risked Rule 11 sanctions had he filed suit on the basis of Bettis's deposition testimony. This argument may be sincere, for the question can be read as a rhetorical expression of skepticism, and the Bettis deposition hardly supports an inference of official misconduct. Yet counsel now cites this same deposition in his effort to avoid summary judgment. If, as counsel insists in his opening brief, the Bettis deposition could support a suit in 1989 only by aid of "a guess and a hope" or "an extravagant inference," *see In re Kelly,* 808 F.2d 549,

551–52 (7th Cir.1986), then that same deposition cannot now create a genuine issue of material fact as to the propriety of the Department's actions. Plaintiff cannot have it both ways.

### III.

 That leaves Count II, which relates to the denial in 1991 of AGC's license application. In his complaint, McCrery alleged that the Department's finding in 1991 that he was "not of good business reputation" was "predicated solely and exclusively upon the false and defamatory information ... which was the real basis for the defendants having revoked Berwick Grain Co.'s grain dealers and warehouse licenses April 16, 1987." Although the district court concluded that there was "absolutely nothing in the record to suggest that the Defendants had manufactured evidence against McCrery," McCrery submits that the district court "misapprehended" his claim:

> [McCrery] does not suggest that any evidence at all was developed at the AGC proceedings. Rather, the AGC proceedings resulted in the issuance of an order which, for the first time, disseminated the adverse information which had four years earlier been developed harmful to his reputation and ability to possess a state issued grain dealer's and warehouse license.

Regardless, we are at a loss to locate any materials suggesting that Department officials, either in 1987 or in 1991, concocted false evidence. Accordingly, we AFFIRM the judgment of the district court.