Gary **MILLER,** Plaintiff–Appellant,

v.

**FORD MOTOR COMPANY,**
Defendant–Appellee.

No. 03–3263.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 2004.

Decided June 30, 2004.

Rehearing Denied Aug. 3, 2004.

Robert M. Hodge, Chicago, IL, for Plaintiff–Appellant.

Stephen M. Bledsoe, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, Kansas City, MO, for Defendant–Appellee.

Before FLAUM, Chief Judge POSNER, and WILLIAMS, Circuit Judges.

## ORDER

Gary Miller worked as a security guard for Ford Motor Company until the automaker summarily terminated his employment on September 18, 1998. He appeals the district court's grant of Ford's motion

for summary judgment on his claim of wrongful termination without cause, arguing that it failed to find a genuine issue of material fact regarding his status as an at-will employee. Because the record on appeal contains no evidence suggesting that Miller was anything but an at-will employee at the time of his termination, we find no material issue of fact appropriate for trial. Therefore, we affirm the grant of summary judgment in favor of Ford.

## I. BACKGROUND

Gary Miller had worked at Ford since 1972, most recently as the head of security at the company's Chicago Assembly Plant. After twenty-six years with the company, Ford terminated his employment in the wake of internal investigations into a series of unauthorized parties that several employees held in the parking lot of the plant. Miller was not present during the parties and cooperated in the subsequent investigation; however, he was terminated for having failed to prevent the parties.

Miller then filed suit against Ford in Illinois state court, claiming wrongful termination without cause, wrongful termination in violation of public policy, breach of contract, and negligence. Ford removed the case to federal court and moved to dismiss all claims. The district court granted Ford's motion to dismiss on all claims except the count of wrongful termination without cause. Following additional discovery, Ford moved for summary judgment on the remaining allegation, arguing that Miller had failed to introduce evidence of a policy statement by Ford that would have altered his at-will employment status. On March 24, 2003, the district court granted Ford's motion.

The district court reasoned that Miller, appearing *pro se*, failed to introduce evidence sufficient to show that Ford's written or verbal representations altered his presumed at-will employment status. It stated that after reviewing Ford's Industrial Relations Administration Manual ("IRAM") (later called the Employee Relations Administration Manual ("ERAM")), it concluded that Ford's handbook and statement of policies did not contain any statements sufficient to create enforceable contract rights under Illinois law under the test established in *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987).

Following the district court's decision, Miller filed two motions for leave to amend and supplement his pleadings and complaint. The district court denied these motions but specifically noted that it treated them as effectively seeking relief from or amendment of judgment under Fed. R.Civ.P. 59 or 60. Accordingly, the court determined that these motions tolled the time for filing an appeal.

## II. ANALYSIS

### A. Appellate Jurisdiction

■ Ford first challenges our jurisdiction over Miller's appeal, contending Miller's notice of appeal was untimely. Although the district court granted Ford's motion for summary judgment on March 24, 2003, Miller did not file his notice of appeal until August 25, 2003. Normally, a party must file a notice of appeal within thirty days after the order appealed from is entered. Fed. R.App. P. 4(a)(1). However, the time for appeal is tolled by a motion to alter or amend the judgment under Rule 59 or a motion for relief under Rule 60, if made within ten days after the judgment is entered. Fed. R.App. P. 4(a)(4); Fed.R.Civ.P. 59(e).

Miller, proceeding *pro se*, filed post-judgment motions on March 31, 2003 and April 3, 2003, both within ten days after

the district court's grant of summary judgment. The substance of these motions may be reasonably viewed as requests for reconsideration. *See United States v. City of Chicago,* 631 F.2d 469, 474 (7th Cir. 1980) ("Any motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label.") (citation omitted). Miller's March 31 Motion for Leave to Amend and Supplement Pleading asks the court to "revisit [the] Order granting defendant's motion for summary judgment." Likewise, his April 3 Motion for Leave to Amend and Supplement Complaint requests that the court "revisit [the] Order granting defendant's motion for summary judgment on amended and supplemental merits of discharge. . . ." In light of the reconsideration Miller requested in the two filings, the motions can be treated as Rule 59(e) motions to alter or amend the judgment. As such, the time for filing the notice of appeal tolled until the district court's decision to deny these motions on July 28, 2003. Thereafter, Miller filed notice of his appeal on August 25, 2003, within the thirty day period for timely appeals. Thus, this court has appellate jurisdiction and we will decide the case on its merits.

## B. Termination Without Cause

Miller admits that he began his employment with Ford as an at-will employee. However, he contends that Ford's written policies raise a triable issue of material fact as to whether Ford altered his employment relationship to one that required just cause prior to termination. We review the district court's grant of summary judgment de novo, construing all facts and drawing all reasonable inferences in favor of Miller as the non-moving party. *See* Fed.R.Civ.P. 56(c); *Hudson Ins. Co. v. City of Chicago Heights,* 48 F.3d 234, 237 (7th Cir.1995).

Miller acknowledges that Illinois law presumes that employment is at-will where, as here, the employee is hired without a fixed term. *See Duldulao,* 106 Ill. Dec. 8, 505 N.E.2d at 318; *Harris v. Eckersall,* 331 Ill.App.3d 930, 265 Ill.Dec. 113, 771 N.E.2d 1072, 1075 (2002). Thus, absent a contract to the contrary, Ford (or Miller) could terminate the employment relationship at any time, for any reason. *See Harris,* 265 Ill.Dec. 113, 771 N.E.2d at 1075.

■ In arguing that the district court improperly granted summary judgment in favor of Ford, Miller first contends that the district court improperly relied on the initial employment agreement he signed when he first began working for Ford. In that agreement, he explicitly acknowledged that Ford could unilaterally terminate the employment relationship. However, Miller asserts that Ford subsequently modified this at-will relationship by requiring him to maintain membership in a union. Even if his union membership temporarily changed his at-will status and negated the effect of his initial employment agreement as he contends, Miller acknowledges that he was no longer a member of any labor organization at the time of his termination. Therefore, as Miller recognizes, his employment with Ford had reverted to at-will employment when he transferred to the Chicago Assembly Plant.

■ Miller argues that subsequent events modified his employment status to include an enforceable "just cause" termination provision. His principal contention is that language in Ford policies or manuals, including a "Discipline—Supervisory Checklist" ("Checklist") and the IRAM/ERAM, amounted to a modification of his employment status. Under Illinois law, to rebut the presumption of at-will employ-

ment with language in an employment manual or other policy statement, a plaintiff must demonstrate: (1) the language of the policy contained a promise clear enough that the employee reasonably believed that an offer was made; (2) the statement was disseminated to him in such a manner that he was aware of its contents and reasonably believed it to be an offer; and (3) he accepted the offer by commencing or continuing to work after learning of the policy statement. *Duldulao*, 106 Ill. Dec. 8, 505 N.E.2d at 314. In *Duldulao*, the court found an employee handbook created an enforceable contractual right to the disciplinary procedures described therein where it provided:

At the end of 90 calendar days since employment the employee becomes a permanent employee and termination contemplated by the hospital *cannot occur* without proper notice and investigation. . . . [Permanent employees] *are never* dismissed without prior written admonitions and/or an investigation that has been properly documented . . . [and] three warning notices within a twelve-month period *are required* before an employee is dismissed. . . .

*Id.* at 318, 106 Ill.Dec. 8 (emphasis added).

In an attempt to satisfy the *Duldulao* test, Miller first points to language from the Checklist stating:

Salaried employees must comply with all [Ford] standards of conduct . . . the misconduct must have an adverse effect on the Company . . . These obligations arise from the employment relationship and are either self-evident or have been conveyed by notice or warning. . . .

This language, while making clear that employees must comply with Ford's standards of conduct, could not have reasonably led Miller to believe Ford was modifying his employment relationship with a clear promise of employment that was no longer at-will. Unlike the *Duldulao* handbook which detailed specific procedural requirements for the termination of permanent employees in mandatory terms, the language in the Checklist does not detail any steps Ford must take before it can terminate its salaried employees. Rather, the Checklist language simply dictates that employees are expected to conform to a certain level of conduct. *See Border v. City of Crystal Lake*, 75 F.3d 270, 274–75 (7th Cir.1996) (declining to find that handbook stating "employees are subject to . . . reprimand, suspension, and dismissal at any time, as may be appropriate, for conduct or performance," rose to the level of a clear promise capable of limiting the employer's right to terminate).

Moreover, Miller failed to establish that he received the Checklist during his employment. He testified during his deposition that he could not recall from where the Checklist came, how it was generated, or how he obtained the document. Moreover, the record reflects that this document was not even in existence until February 1999, after Ford terminated Miller's employment. As such, it could not have created an enforceable contract, and the Checklist did not alter Miller's status as an at-will employee.

Miller also argues that language from the IRAM/ERAM modified his employment relationship. However, Miller has not directed us to any specific language from the IRAM/ERAM in the record that supports this contention.[1]

---

1. In his reply brief, Miller acknowledges that the IRAM/ERAM provisions he relies on are not in the record. After oral argument, Miller filed a motion with this court for leave to supplement the record on appeal with additional IRAM/ERAM provisions. We denied this motion, as "the appellate stage of the litigation process is not the place to introduce

Finally, Miller attempts to establish a genuine issue of material fact by relying on the declarations of other employees. For example, one manager stated:

> The IRAM/ERAM contained language regarding ... Performance Reviews and Discipline to insure consistency and fairness with policies and values that were distributed to salaried employees. As an administrator, discharge was issued only for good cause.

Decl. of Cecil Waldron. Other managers gave similar statements. In his reply brief, Miller directs our attention to *Vajda v. Arthur Andersen & Co.*, 253 Ill.App.3d 345, 191 Ill.Dec. 965, 624 N.E.2d 1343, 1349 (1993) and *Evans v. Gurnee Inns, Inc.*, 268 Ill.App.3d 1098, 206 Ill.Dec. 551, 645 N.E.2d 556 (1994), arguing that a combination of written and oral communications may satisfy the clear promise requirement of *Duldulao*. However, *Vajda* and *Evans* do not aid Miller. In *Vajda*, for example, the plaintiff survived a motion for summary judgment because he was able to show specific portions of the employee manual that instructed workers to ask their supervisors and managers for clarifications about the company's three-warning policy. 191 Ill.Dec. 965, 624 N.E.2d at 1349. The court stated that the "oral representations to plaintiff made with respect to employment security and discharge procedures thus appear to have been authorized by the Manual and the Procedures." *Id.* Miller, however, has not shown any similar authorization in the IRAM/ERAM or Checklist. In addition, like the plaintiff in *Evans*, Miller has not pointed to any oral statement that would create a reasonable belief that his at-will

status had been modified. *See Evans*, 206 Ill.Dec. 551, 645 N.E.2d at 560. The other employees' declarations to which Miller points do not rise to the level of a "clear promise" that *Miller* was contractually entitled to termination only upon just cause.

In short, Miller has not pointed to anything in the record sufficiently specific to constitute an enforceable just cause termination provision. As such, his employment with Ford remained at-will, and the district court properly granted summary judgment in favor of Ford on Miller's wrongful termination claim.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.

---

new evidentiary materials." *Berwick Grain Co., Inc., v. Ill. Dep't of Agric.*, 116 F.3d 231, 233 (7th Cir.1997). We note that the district court stated it conducted a "thorough review"

of the IRAM and that after this review, it was "unable to find any promise which [met the] test of enforceability." Mem. Op. at 86–87.