In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3591

KELLY HOBBS,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, a municipal corporation,
JOSEPH SENESE, and PAT QUINN,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CV 3795—**Samuel Der-Yeghiayan,** *Judge.*

ARGUED OCTOBER 20, 2008—DECIDED JULY 21, 2009

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Kelly Hobbs, an African-American woman, was passed over for a promotion during her employment with the City of Chicago and claimed race and gender discrimination, retaliation, and the existence of a hostile work environment. We affirm the district court's grant of summary judgment to the defendants because Hobbs failed to show she was similarly or better qualified than the white male who received the

promotion and because she cannot show she suffered retaliation or a hostile work environment as a result of her discrimination complaint.

## I. BACKGROUND

Kelly Hobbs, an African-American woman, began working for the City in 1989 as a Motor Truck Driver in the City's Department of Transportation ("DOT") after attending the University of Illinois at Chicago for four and a half years. Although she no longer worked on truck duty, she retained the title of Motor Truck Driver. In 2000, Hobbs received the responsibilities of Lot Supervisor at the 103rd Street Lot. She served as the only African-American or female Lot Supervisor in the DOT. Many of Hobbs's job duties as Lot Supervisor at the 103rd Street Lot, including preparing time sheets and dealing with Fleet Management, also were duties listed in the Foreman's job description. She appeared to be the daily face of authority, but she was never paid as a foreman. No one ever complained about Hobbs's job performance.

In 1997 and in 2000, Hobbs applied for and interviewed for the Foreman position, but both times a white male received the job. In 2000, Defendant Joseph Senese was chosen over Hobbs as Foreman. Then, in October 2004, Hobbs learned that Defendant Pat Quinn, also a white male, had received a promotion to Acting Foreman three months earlier.

Quinn began working as a Motor Truck Driver in 1986, and he worked as a Lot Supervisor on and off from 2002

to 2004. Quinn described himself as "computer illiterate," while Hobbs claimed to be computer proficient. In 2004, after Senese said he needed help supervising on the street, the DOT's new First Deputy Commissioner Brian Murphy appointed Quinn as Acting Foreman on Senese's recommendation alone. Murphy did not consider Hobbs for the position. Senese and Quinn had known each other for thirteen years since their work together as Motor Truck Drivers. Senese knew Quinn's work ethic and that Quinn had volunteered in the snow program for eight years. Hobbs had only driven a snow plow once. The DOT supervised the City's Streets and Sanitation's program coordinating snow removal.

The City did not post the Acting Foreman position to which Quinn was promoted because an "acting" position is not considered a vacancy and need not be competitively bid. The City's union contract requires the City to post a position after an individual is in the "acting" position for more than 90 days, but the position may be extended by mutual agreement of the parties. The federal monitor in *Shakman v. Democratic Organization of Cook County*, No. 69 C 2145 (N.D. Ill.), stated in a December 2007 report that the City has repeatedly taken advantage of the "acting" policy by allowing individuals to move up to and stay in higher pay grade positions for longer than 90 days, leading to unchecked politically connected appointments in violation of the *Shakman* decree, which bans the use of politics in City hiring. In December 2006, the federal monitor removed Quinn from the Acting Foreman position.

In January 2005, Hobbs filed a charge of discrimination against the DOT with the Illinois Department of Human Rights and the EEOC, alleging the City denied her a promotion to Foreman because of her race and gender. According to Hobbs, word spread about the filed charges. In April 2005, her supervisors reprimanded her for violating a City policy by swiping out early. Hobbs says other white male co-workers were not reprimanded for more serious infractions, such as cursing at Quinn and sleeping during work hours. On April 24, 2005, the same day Hobbs received a notice of her disciplinary hearing, Hobbs confronted Quinn about the swiping out early infraction, and an argument ensued during which Hobbs shouted at Quinn and alleged that he gave her permission to swipe out early to pick up her daughter from school. Quinn later testified in his deposition that no other employee had ever cursed or shouted at him and that the employee that slept on the job was disciplined. Quinn reported Hobbs for insubordination. Hobbs eventually received an oral reprimand for swiping out early, which was later rescinded. She also received a three-day suspension for shouting at Quinn. The deputy commissioner who presided over both of Hobbs's disciplinary hearings did not know about her EEOC charge.

The day Hobbs received her disciplinary notice for swiping out early, she alleges someone vandalized her personal vehicle while it was parked in the secure DOT parking lot. Hobbs claims she saw Quinn and another white male employee standing next to her car twenty

minutes before the vandalism occurred. Hobbs complained to Senese about the vandalism and accused Quinn, but Senese allegedly dismissed Hobbs's allegations and did not investigate the complaint. Hobbs reported the vandalism to in-house Construction Deputy Commissioner William Cheaks, who told her he would look into it and get the "heat" off of her, but never did.

Hobbs complains she was assigned work duties to humiliate her and that Quinn and other white male co-workers congregated outside her office door, which intimidated her. Hobbs also alleges that her job duties changed when Quinn became Acting Foreman. She had been assigned to drive a truck only once from 1994 to 2002, but after November 2004, she received truck driving responsibilities twenty times. Quinn allegedly told others Hobbs had no authority to give drivers assignments. On Christmas Eve 2005, Hobbs was assigned to transport a truck across the city and then was told she had the wrong truck and had to repeat the trip that day. Quinn and Senese testified that they asked Hobbs to drive only when there was a shortage of Motor Truck Drivers and that driving is part of a Lot Supervisor's duties. On February 8, 2006, Senese told Hobbs her commercial driver's license was invalid, and as a result, she lost a day of pay. But when she went to the Secretary of State to clear up the matter, she was told the state had never sent the City anything about her license and that it remained valid. During discovery, the City presented a Driver's License Verification Action Status Report dated February 6, 2006, with Hobbs's name on it.

On July 13, 2006, Hobbs filed the instant lawsuit alleging race and gender discrimination and retaliation claims in violation of 42 U.S.C. § 1981 against all defendants; race and gender discrimination and retaliation in violation of Title VII against the City; a hostile work environment claim against the City; and equal protection claims against all defendants pursuant to 42 U.S.C. § 1983. The district court granted the City's motion to dismiss the section 1981 race and retaliation claims and the section 1983 claim against the City. The remaining claims were Title VII race and gender discrimination and retaliation claims against the city, section 1981 race discrimination and retaliation claims and section 1983 equal protection claims against the individual defendants. Hobbs appeals the district court's grant of summary judgment in favor of the defendants on all of the claims except the equal protection ground.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo and view the facts and draw all inferences in the light most favorable to the nonmoving party. *Winsley v. Cook County*, 563 F.3d 598, 602 (7th Cir. 2009). A district court properly grants summary judgment where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### A.  The district court properly granted summary judg-
     ment on Hobbs's Title VII and section 1981 claims.[1]

Hobbs argues she suffered race and gender discrimina-
tion because the City failed to promote her, or even
consider her for promotion, to the position of Acting
Foreman in 2004. She proceeds on the indirect, bur-
den-shifting method set out in *McDonnell Douglas Corp.
v. Green*, 411 U.S. 792 (1973). Under Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, a
plaintiff successfully establishes a prima facie case of
discrimination by the indirect method if she shows that:
(1) she is a member of a protected class; (2) she is
qualified for the position; (3) she was rejected for the
position; and (4) the position was given to someone
outside the protected class who was similarly or less
qualified than she. *Jackson v. City of Chi.*, 552 F.3d 619, 622
(7th Cir. 2009). The presumption of discrimination
created by establishing a prima facie case shifts the
burden to the defendant "to produce a legitimate,
noninvidious reason for its actions." *Atanus v. Perry*, 520
F.3d 662, 672 (7th Cir. 2008). If the defendant rebuts
the prima facie case, the burden then shifts back to the
plaintiff to show that the reasons proffered by the defen-
dant are merely pretextual. *Id.*

Because the City does not contest the first three elements
of the prima facie case, we focus on the fourth prong.

---

[1] We analyze Hobbs's section 1981 and Title VII claims
together because they both require the plaintiff to prove the
same prima facie elements. *See Antonetti v. Abbott Labs.*, 563
F.3d 587, 591 n.4 (7th Cir. 2009).

Hobbs asserts she was similarly or better qualified for the position than Quinn because she had more experience as a Lot Supervisor, and she possessed computer skills and a college education that Quinn did not.

We agree with the district court that Hobbs failed to show that she was as qualified or more qualified than Quinn. Commissioner Murphy appointed Quinn on the recommendation of Senese, who knew Quinn and had worked with him in the past on the streets and was aware of Quinn's work ethic because they had known each other for thirteen years. Senese also recommended Quinn for the job because of the latter's experience in the City's snow program. Quinn had volunteered with the snow program for years, while Hobbs had refused to do so. Moreover, Quinn had at least two more years experience than Hobbs as a Motor Truck Driver. Even though Hobbs had more experience as a Lot Supervisor, Senese was particularly interested in hiring someone who could help him on the streets. Hobbs further suggests that she was better qualified because she attended college and was computer proficient, while Quinn had neither qualification. That may be true, but it does not help Hobbs because college education and computer skills were not part of the job qualifications for Acting Foreman.

Hobbs posits that because the City deviated from its formal written procedures of posting the Acting Foreman position as a vacancy, a prima facie case of discrimination must be presumed. Hobbs relies on *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518 (7th Cir. 1994), for the

proposition that since the City deviated from its policy, she must show only that "but for such a practice she likely would have been approached" and that if approached, she would have accepted the position. *Loyd*, 25 F.3d at 523. But Hobbs's reliance on *Loyd* is misplaced because *Loyd* instructs that if an employer disregards an application process, the employer cannot defeat a plaintiff's prima facie case by arguing that the plaintiff did not apply for a position. The employee must still meet the fourth prong of the prima facie case and prove her superior qualifications. *See id.; see also Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 & n.2 (7th Cir. 2008). The City conceded that Hobbs expressed interest in the position, so the real inquiry is whether Hobbs was better qualified than Quinn, and as explained above, Hobbs failed to show her qualifications equaled or surpassed Quinn's. *See Jones v. Firestone Tire and Rubber Co., Inc.*, 977 F.2d 527, 533 (11th Cir. 1992) (deciding that because the employer failed to post the opening or accept applications, the plaintiff did not need to show that he applied, but he still needed to show that he was more qualified for the position in order to establish a prima facie case of discrimination).

Even if Hobbs satisfied the prima facie case, the City has offered nondiscriminatory reasons for promoting Quinn, which Hobbs failed to show are pretextual. "Pretext is a 'lie, specifically a phony reason for some action.'" *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006) (quoting *Russell v. Acme-Evans, Co.*, 51 F.3d 64, 68 (7th Cir. 1995)). To demonstrate pretext, Hobbs must show: (1) the City's "nondiscriminatory reason was dishonest";

and (2) the the City's "true reason was based on a discriminatory intent." *Fischer*, 519 F.3d at 403 (internal quotation marks and citation omitted).

Hobbs did not show that the City lied about its reasons for promoting Quinn. As evidence, Hobbs asserts that the Department of Streets and Sanitation, not the DOT, runs the snow program[2] and that Senese never said he needed help on the streets prior to promoting Quinn. But Hobbs is mistaken on both counts. Quinn volunteered to work the snow program, while Hobbs refused to do so, which demonstrated to Senese Quinn's willingness to work on the streets—one of the qualities Senese was looking for in an Acting Foreman. The City refuted Hobbs's contention that Senese lied about needing more help when it showed that in the summer of 2004, Murphy questioned Senese about why he was not completing certain tasks and Senese explained he needed help. Hobbs also asserts that Murphy acted as Senese's cat's paw when he appointed Quinn, but we fail to see how that assertion proves pretext.

Hobbs further argues that the district court erred because it improperly required her to demonstrate

---

[2] Hobbs also asserts that the timing of Quinn's promotion shows the City's snow program explanation is a lie. Quinn was appointed in August, and if the City had followed the 90-day rule regarding appointments to Acting positions, his appointment would have ended in November, before the beginning of the winter season. This argument fails because the City's Union Contract allowed for the extension of the 90-day period by mutual agreement of the parties.

both pretext and discriminatory animus. Hobbs is incorrect. Our recent Title VII cases explain that a plaintiff demonstrates pretext by showing the employer's proffered nondiscriminatory reason is a lie and the real reason is based on discriminatory intent. *See, e.g., Fischer*, 519 F.3d at 403; *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007); *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 646 (7th Cir. 2006) ("In a word, the Plaintiff must establish that . . . [the employer's] reasons . . . were merely made up to cover up . . . discriminatory reasons."). That is precisely what the district court required of Hobbs, but she failed to prove either. Hobbs's mere assertion that she is better qualified will not do the trick to prove the City is lying about the real reason it picked Quinn for the spot. Evidence of Hobbs's qualifications only would serve as evidence of pretext if the differences between her and Quinn were "so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Mlynczak v. Bodman*, 442 F.3d 1050, 1059-60 (7th Cir. 2006) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002)).

Moreover, Hobbs has not shown that the City's real reason for picking Quinn was race or gender discrimination. Hobbs maintains there are no African-American or female Foremen—while a City supervisor testified that there were three African-American General Foremen—but she did not support her contention with admissible evidence. *See Sublett*, 463 F.3d at 739 (plaintiff failed to support her claim that defendant's alleged failure to

promote any African Americans was circumstantial evidence of pretext with sufficient information about the relevant applicant pool). We also note that Hobbs did not raise a disparate impact claim.

Hobbs also put forth no personal knowledge of racial or sexist statements or conduct in her attempt to demonstrate pretext. *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996) ("An employer's knowledge that the plaintiff is a member of a protected class is obviously not enough to cast doubt on that employer's proffered reason for rejecting a candidate. . . ."). Hobbs testified in her deposition that she never heard anyone in the department make derogatory comments about African Americans. She also testified that Senese on occasion told her to send drivers home because they could not drive a stick. Hobbs assumed Senese meant women, but could not remember if he actually used the word "women." She also stated that a co-worker told her Quinn made comments about not assisting women get jobs. But Hobbs could not point to any derogatory remarks made about women in her presence.

Although the process through which Quinn received his promotion might be questionable, it does not prove gender or race discrimination. It might suggest favoritism on some other basis, and in fact, the federal monitor removed him from the Acting Foreman position. That Hobbs did not believe Quinn deserved the job is not enough to survive summary judgment. *See Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) ("[The court does] not sit as a superpersonnel department where

disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices.") (internal quotation marks and citation omitted). Therefore, we affirm the district court's grant of summary judgment in favor of the defendants on Hobbs's Title VII and section 1981 claims.

## B. Hobbs's retaliation claim fails.

Hobbs further argues she proved through the direct method that the City took adverse actions against her in retaliation for her discrimination complaints with the EEOC and the Illinois Department of Human Rights.

Title VII protects employees from retaliation as a result of their discrimination complaints. *See* 42 U.S.C. § 2000e-3(a). Under the direct method of proof, the only method at issue here, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action taken by the employer; and (3) there was a causal connection between the two. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007). The adverse act must be such that it would "dissuade a reasonable employee from making or supporting a claim of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). There is no dispute that Hobbs has satisfied the first prong, but we conclude her claim fails to meet the other two remaining prongs.

Hobbs offers several grounds for her retaliation claim. First, Hobbs says she was orally reprimanded and sus-

pended for three days following two disciplinary hearings, but she has failed to establish a causal connection because the commissioner who disciplined her did not know Hobbs filed the EEOC charge. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) (to establish retaliation for a discrimination complaint, the employer must have actual knowledge of the complaint).

Hobbs also argues she was stripped of the authority she had enjoyed as Lot Supervisor and was given undesirable assignments, such as driving on twenty different occasions when she had been given a driving assignment only once in the ten years prior to her complaints. Therefore, her only argument concerns assignments that were clearly within her job duties. She did not point to any evidence that she suffered loss of a job title or received less pay.[3] A materially adverse action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities*." Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). The change in Hobbs's job duties correlates temporally to Quinn's promotion rather than to her discrimination complaints. Prior to Quinn's appoint-

---

[3] Hobbs retained the title of Motor Truck Driver, but was one of the Motor Truck Drivers in her yard that also had the extra duty of being a Lot Supervisor. Lot Supervisors do not receive extra pay, but perform supervisory duties, such as relaying daily work assignments, checking equipment and driving a truck when needed.

ment, Hobbs supervised daily truck operations and drivers and handed out assignments. Once Quinn took over as Acting Foreman, he assumed these responsibilities. Quinn's elevation—not Hobbs's complaints—was the reason her responsibilities changed.

Hobbs also suggests that she suffered intimidation when several white male co-workers congregated outside her office to talk. She also takes issue with the City requiring proof of a valid commercial driver's license. Neither of these qualify as adverse actions. Workers were allowed to be in the area outside her office, which she shared with about five other people. Also, the City requires proof of a valid commercial driver's license for all Motor Truck Drivers. During discovery, the City provided the document that showed Hobbs was listed as one of the driver's whose license needed to be verified.

Hobbs's final basis for her retaliation claim—the failure to investigate her car vandalism—is more troubling. Damaging one's property is a serious allegation, and Hobbs argues Senese told her he could not talk to her about the vandalism because of her discrimination complaint. However, Senese knew he was named in the charge and his own conduct was being investigated by the EEOC. It would have been odd for Senese—the very person Hobbs was complaining about—to investigate her allegation. Hobbs then went to Commissioner Cheaks, who also did not investigate her accusation. However, Hobbs presented no evidence that Cheaks actually knew about her EEOC charge. *See Tomanovich*, 457 F.3d at 668. The mere fact that the vandalism occurred after the EEOC

charge and the same day that Hobbs received notification of a disciplinary action is not enough to survive summary judgment. *See Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 859 (7th Cir. 2008) ("suspicious timing alone is generally insufficient to establish a genuine issue of material fact for trial"). So, the district court properly granted summary judgment on Hobbs's retaliation claim.

## C. Hobbs's hostile work environment claim also fails.

Finally, Hobbs argues she suffered a hostile work environment, based on the same facts she set out for her retaliation claim. The conduct complained of must be severe or pervasive "so as to alter the conditions of [the employee's] environment and create a hostile and abusive working environment." *Winsley*, 563 F.3d at 606 (quoting *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000)). Retaliatory harassment can rise to the level of a hostile work environment "if it is severe enough to cause a significant change in the plaintiff's employment status." *Stutler v. Ill. Dep't of Corrs.*, 263 F.3d 698, 703 (7th Cir. 2001).

Here, the facts do not rise to the level of the severe or pervasive threshold. *See Walker v. Mueller Indus., Inc.*, 408 F.3d 328, 333-34 (7th Cir. 2005). No reasonable jury could conclude that being assigned duties that were part of one's job description and having co-workers congregating outside of a shared office amount to a hostile work environment. The alleged vandalism of Hobbs's car and the failure to investigate it is disgraceful, but that one act alone is not egregious enough to create a

hostile work environment. *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993) ("relatively isolated instances of non-severe misconduct will not support a hostile environment claim") (internal quotation marks omitted).

The district court properly granted summary judgment on Hobbs's hostile environment claim.

## III. CONCLUSION

Therefore, we AFFIRM the district court's grant of summary judgment to defendants.