NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 21, 2009[*]
Decided November 4, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

No. 09-1746

| | |
|---|---|
| CECIL W. WATSON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 07 C 413 |
| JOHN E. POTTER, Postmaster General, | |
| United States Postal Service | Rebecca R. Pallmeyer, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

    Cecil Watson, who is African-American, worked for the United States Postal Service for 22 years before he was fired in 2006.  He sued his former employer for employment

---

[*] After examining the briefs and the records, we have concluded that oral argument is unnecessary.  Thus, the appeals are submitted on the briefs and the records.  *See* FED. R. APP. P. 34(a)(2).

discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, claiming race discrimination and retaliation. The district court granted summary judgment in favor of the Postal Service. We affirm.

Watson's suit arises from clashes with his supervisor, Kenneth Michalowski. Watson, who became manager of the Hoffman Estates branch of the Schaumburg post office in 2002, reported directly to the postmaster of the Schaumburg post office, a position Michalowski assumed in April 2004. In January 2005, Michalowski issued Watson a warning letter for refusing to follow orders to authorize payment to a supervisor. The following month Michalowski issued Watson another warning letter after he left work before all of the letter carriers had returned from their routes, in violation of a directive from Michalowski. In September, Watson received a third warning letter for not following instructions to maintain the "overtime-desired lists" and "annual leave boards" for workers at the Hoffman Estates facility. In October, Watson received a poor rating from Michalowski on his year-end merit evaluation.

Watson's discharge stemmed from events surrounding the handling of suspected hazardous substances. In November 2005 an employee called Watson at home and informed him of a suspicious powder found at the bottom of a package. Although Postal Service policy in such a situation was not to handle the suspicious package, but to isolate it and clear the area, Watson instructed the employee to put some of the powder in a cup and pour water over it to see if it would foam, indicating the presence of detergent and not something more sinister. The next day, after confirming the instructions Watson had given, Michalowski removed Watson from his position as manager and reassigned him to the Schaumburg facility under Michalowski's direct supervision.

On his first day at the Schaumburg facility, Watson went home sick. Michalowski incorrectly marked him absent without leave instead of on sick leave, but later corrected the error so that Watson received his proper salary on his scheduled pay date. Watson later sought leave at Thanksgiving and Christmas in 2006, but those requests were denied.

Watson reported to work only four times after being assigned to the Schaumburg facility—twice in December 2005, once in early February 2006, and once in March—and on each of his last three appearances spoke only briefly to Michalowski before leaving. Michalowski filed a proposal to terminate Watson on March 31, and Watson's termination took effect on June 3.

Watson filed this suit under Title VII. He claimed that each of the events he described—the letters of warning, his poor year-end evaluation, being relieved of his duties as manager, being deemed AWOL instead of on sick leave, the denial of his leave requests,

and Michalowski's proposal that he be fired—constituted race discrimination. He also claimed that each of the events constituted retaliation.

The district court granted summary judgment to the Postal Service, finding that Watson failed to establish his race-discrimination and retaliation claims because some of the actions he complained of were not materially adverse, and because he offered no evidence to show an improper motive behind the Postal Service's actions.

Watson argues on appeal that he presented sufficient evidence to establish a prima facie case of race discrimination under the indirect burden-shifting method described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of race discrimination under Title VII, Watson must show that: (1) he is a member of a protected class; (2) his job performance met the Postal Service's legitimate expectations; (3) he was subject to a materially adverse employment action; and (4) the Postal Service treated similarly-situated employees outside his protected class more favorably. *See McDonnell Douglas Corp.*, 411 U.S. at 802-04; *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). Our review is de novo. *Hobbs v. City of Chicago*, 573 F.3d 454, 460 (7th Cir. 2009).

There are three general categories of materially adverse actions that can support a Title VII claim: (1) cases in which an employee's compensation, benefits or other financial terms of employment are diminished; (2) cases in which a transfer to a lateral position prevents an employee from using his skills and experience, thereby dimming the employee's career prospects; and (3) cases in which a change in working conditions subjects an employee to a humiliating, unsafe, or otherwise significantly negative alteration in the employee's workplace environment. *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009); *see Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 743-45 (7th Cir. 2002).

The district court correctly found that Watson could not establish an adverse employment action with regard to the warning letters, the performance evaluation, the denial of his leave requests, or Michalowski's incorrectly marking him as AWOL. Although those actions might conceivably fall within the third category of adverse actions, concerning changes in working conditions, such changes must objectively create a hardship. *Herrnreiter*, 315 F.3d at 744. These cases typically involve employers' making jobs unbearable for employees, or severe harassment that worsens employment conditions as perceived by a reasonable person. *Id*. at 745. Not "every trivial personnel action" that displeases an employee can form the basis of a discrimination suit, *id*., but that is all these four actions were.

Although two of the Postal Service's actions were materially adverse—the decision to relieve Watson of his managerial duties, and the decision to terminate him—Watson still

cannot establish a prima facie case because he cannot show that his job performance met the Postal Service's legitimate expectations. Regarding the loss of his managerial duties, as the district court explained, as of November 2005, Watson failed to meet the Postal Service's legitimate expectations because he violated policy during the incident involving the suspicious powder. *See Anders v. Waste Mgmt. of Wisc.*, 463 F.3d 670, 676 (7th Cir. 2006) (holding that employee who did not follow employer's established policy failed to meet legitimate expectations). As for his termination, the powder incident also provided a legitimate basis for that decision. Watson argues that the decision was not timely, in that it was made four months after the powder incident, but as the district court noted, the delay was not suspicious because Watson had essentially stopped working before Michalowski ultimately recommended his termination.

Watson next argues generally that the district court erred in concluding that he could not establish unlawful retaliation, and that he can do so under the direct method of proof. See *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). But Watson cannot show a causal connection between any protected activity he engaged in and any adverse action. Watson suggests that Michalowski retaliated against him for contributing to an Equal Employment Opportunity complaint that led to the demotion of another postmaster in July 2004, but Michalowski disciplined Watson for disobeying orders or Postal Service policy, and such discipline was permissible in spite of Watson's EEO activity. *See Argyropoulos*, 539 F.3d at 734 (holding that "inappropriate workplace activities are not legitimized by an earlier-filed complaint of discrimination").

Finally, any claim by Watson of retaliation under the indirect method of proof, *see Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009), would similarly fail because, as discussed above, some of the actions the Postal Service took against him were not materially adverse, and because he did not perform his job satisfactorily.

We therefore AFFIRM the judgment of the district court.