Lisa M. **GILLEMS,** Plaintiff–Appellant,

v.

**HAPAG–LLOYD (AMERICA) INC.,**
Defendant–Appellee.

No. 12–3384.

United States Court of Appeals,
Seventh Circuit.

Submitted April 15, 2013.*

Decided April 16, 2013.

Lisa M. Gillems, Lombard, IL, pro se.

Craig R. Annunziata, Attorney, Fisher & Phillips, Chicago, IL, for Defendant–Appellee.

Before JOEL M. FLAUM, Circuit Judge, ILANA DIAMOND ROVNER, Circuit Judge and JOHN DANIEL TINDER, Circuit Judge.

**ORDER**

Lisa Gillems appeals the grant of summary judgment in favor of Hapag–Lloyd, her former employer, in this lawsuit claiming employment discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e–2(a)(1), 2000e–3(a), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623. We affirm the judgment.

We recount the evidence in the light most favorable to Gillems. Hapag–Lloyd, a subsidiary of a global container shipping

---

* After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R.APP. P. 34(a)(2)(C).

line, hired Gillems as a customer service coordinator in May 2008. Gillems is African American and was 43 at the time. As a new employee she was subject to a 90-day probationary period during which Hapag–Lloyd evaluated her suitability for the position.

Within that first 90 days, two coworkers reported to Gillems's supervisor, Shannon Smerdon, that she had acted inappropriately in the workplace. A coworker who sat near Gillems complained that she and another employee had engaged in loud, personal conversations for days, including a dialogue about the bowel movements of Gillems's dog. And Amy Ross, who was assigned to train and mentor Gillems during her probation, met with Smerdon to lodge a variety of complaints. The morning of the meeting, according to Ross, she had noticed an error by Gillems and, as her trainer, summoned Gillems to her work area to discuss it. When Ross then asked what was keeping her, Gillems responded, "Where do I have to answer to you on what I'm doing." Ross also complained that Gillems was consistently rude to other employees and often talked loudly at her desk about matters unrelated to work. And when Ross had asked her to lower her voice, Gillems replied: "You ain't my manager. How you gonna tell me what to do?" Ross reported, too, that Gillems had said, "Oh, it must be a colored thing," when she learned that another employee would accompany Ross to meet the company's sales representatives. And another time, Ross told Smerdon, Gillems had noticed her tattoo and said, "I don't know why you folk do that, black folk don't get tattoos." During the meeting Ross disclosed other comments by Gillems: She mentioned trying to poison her ex-husband and said she would kill any man who dared to hit on her daughter.

Smerdon and Sylvester Burtin, the personnel manager, investigated whether the "colored thing" remark had violated Hapag–Lloyd's policy prohibiting derogatory comments based on protected characteristics and allowing for discharge or other discipline of offending employees. Both Smerdon and Burtin interviewed Gillems, who admitted making the comment. Smerdon also questioned Ross further and interviewed three other employees before deciding with Burtin the appropriate response. Hapag–Lloyd concluded that Gillems had made inappropriate comments, some of them based on race, and was causing morale problems. The company fired Gillems before her probationary period had ended. She did not appeal the decision, as was allowed under the company's policy.

Gillems then filed suit claiming that Hapag–Lloyd had discriminated against her based on race and age, subjected her to a hostile work environment, and fired her in retaliation for complaining about race discrimination. Hapag–Lloyd's unlawful conduct is evident, says Gillems, because the company allowed other employees to take longer breaks and lunches, gave her no credit for the work she did on Ross's accounts, required her alone to tell a supervisor if she left her desk, and allowed Ross, but not her, to do "other things" while she was supposed to be working.

In ruling for Hapag–Lloyd the district court concluded that Gillems had not established a prima facie case of discrimination because she lacked evidence showing that she was meeting her employer's legitimate job expectations or that the company treated similarly situated coworkers more favorably. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court also reasoned that the instances of disparate treatment alleged by Gillems were not per-

vasive or sufficiently severe to have altered the conditions of her employment and created a hostile work environment. And in any event, the court added, Gillems had no evidence that Hapag–Lloyd had prohibited her from taking long breaks, moving around the office without permission, or doing "other things" at work: She admitted that no one told her she could not leave her desk and that she did not know what her coworkers did when they left, conceding that they could have been doing work around the office. Finally, the court explained, Gillems had not established a prima facie case of retaliation because, as far as the record shows, she had never engaged in protected activity.

On appeal Gillems does not challenge the district court's legal analysis of her claims, instead arguing that the court based its decision on a misunderstanding of several key facts. We disagree. Gillems first asserts that Ross fabricated the bulk of her complaints (except for the "colored thing" and the "[w]here do I have to answer to you on what I'm doing" remarks, which Gillems admits). But though Gillems denied much of what Ross had told Smerdon, Ross was not the decisionmaker. The record shows that Burtin and Smerdon investigated Gillems's conduct and that Burtin communicated the company's decision to fire her. Thus, even if Ross *had* fabricated all of the other complaints against Gillems, as long as Burtin and Smerdon—the decisionmakers—genuinely believed that Gillems acted inappropriately, they were entitled to act on that belief. *See Blise v. Antaramian,* 409 F.3d 861, 867–68 (7th Cir.2005); *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 889 (7th Cir. 2001). This is true even if the complaints against Gillems are not particularly egregious, *see Gordon,* 246 F.3d at 889, as we are not "a superpersonnel department where disappointed applicants or employees can have the merits of an employer's

decision replayed to determine best business practices," *Blise,* 409 F.3d at 867 (citation and quotation marks omitted); *see Hobbs v. City of Chicago,* 573 F.3d 454, 463 (7th Cir.2009); *Brewer v. Bd. of Trustees of the Univ. of Ill.,* 479 F.3d 908, 922 (7th Cir.2007). Gillems does not argue that Burtin and Smerdon believed that the complaints against her were false, and so the veracity of Ross's reports is not the issue.

Gillems also challenges the sufficiency of Hapag–Lloyd's investigation into her conduct, asserting that Smerdon's four interviews of her coworkers constitutes no investigation at all. She does not dispute, however, that her coworkers reported to Smerdon that she had engaged in inappropriate conduct. And even if the company's investigation could have been more thorough, Gillems failed to show anything about it that contravened standard procedure. *See Davis v. Time Warner Cable of Se. Wis., L.P.,* 651 F.3d 664, 674 (7th Cir. 2011); *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 407 (7th Cir.2007).

Gillems also contends that the district court erroneously stated that she received a copy of the company's employee handbook, which includes the policy against discrimination and harassment. Without the handbook, Gillems asserts, she did not know that she could appeal the discharge. But Gillems admitted at summary judgment that on her first day of work she did receive the handbook, which contains not only the policy but also an explanation of Hapag–Lloyd's appeal process. She confessed that she "did not read all of it," but not reading the handbook is a far cry from not receiving it. Moreover, whether Gillems knew that she could appeal the company's decision has nothing to do with the claims before us.

We have considered Gillems's remaining arguments and conclude that they are without merit and do not warrant further discussion.

AFFIRMED.