In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-3375

TINA GOSEY,

*Plaintiff-Appellant*,

*v.*

AURORA MEDICAL CENTER,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 11-C-805 — **Rudolph T. Randa**, *Judge.*

SUBMITTED MARCH 26, 2014[*] — DECIDED APRIL 11, 2014

Before WOOD, *Chief Judge,* and SYKES and HAMILTON, *Circuit Judges.*

PER CURIAM. Tina Gosey worked as a chef's assistant at Aurora Medical Center in Kenosha, Wisconsin. Believing that

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

management harassed, refused to promote, and eventually fired her because she is African-American, and that her discharge was also retaliatory, she sued Aurora for violations of Title VII of the Civil Rights Act of 1964. See 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). The district court granted summary judgment for Aurora across the board. We affirm with respect to the claims of harassment and failure to promote, but we conclude that further proceedings are necessary on Gosey's claims that Aurora fired her because of her race and in retaliation for her complaints of discrimination.

**I**

Aurora hired Gosey in 2008. In September 2009 she applied for an open position as food-services manager at the hospital. The job posting stated a preference for someone with "five to seven years of progressively responsible experience in managing a food service operation," including experience in managing "staff, budgets and multiple human resources functions." Gosey was not alone in her interest: the posting attracted more than 150 applicants. Aurora interviewed Gosey, but it ultimately hired a white woman.

Several months later Gosey filed a charge of discrimination with the Equal Employment Opportunity Commission and the Wisconsin Department of Workforce Development. She alleged that Aurora had denied her the promotion and was assigning extra duties and imposing discipline for sham infractions because of her race. In addition, she accused Aurora's managers of trying to manufacture an excuse to fire her by altering her attendance records so that it would appear that she

was tardy. Her fears of losing her job were realized when, two months later, Aurora fired her. This lawsuit followed.

In the district court, Gosey was represented by counsel, but she nonetheless failed to respond fully to the statement of proposed material facts that Aurora furnished with its motion for summary judgment. This had the effect of leaving undisputed many of the company's proposed findings. See E.D. WIS. CIV. L.R. 56(b)(4). The district court was entitled to enforce its local rules, *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009); *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005), and thus to accept Aurora's version of the facts to the extent it was supported by admissible evidence. We will do the same. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012).

## II

### A

Reviewing the district court's judgment *de novo,* we too conclude that Gosey is not entitled to go to trial on her claim of racial discrimination in the promotion decision. She introduced no direct evidence that race played a part in the promotion decision, and her claim falls short under the indirect method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because the evidence that Aurora hired someone more qualified is undisputed. Gosey had seven years of experience—as a chef's assistant, chef, and owner of a catering business—but the successful applicant had over 15 years of experience as a food-service director, manager, and supervisor. See *Hobbs v. City of Chi.*, 573 F.3d 454, 460 (7th Cir. 2009) (explaining that, under indirect method, plaintiff alleging failure to promote must

present evidence showing that position was given to someone similarly or less qualified); *Grayson v. City of Chi.*, 317 F.3d 745, 749 (7th Cir. 2003) (same).

## B

We also agree with the district court that Aurora was entitled to summary judgment on Gosey's harassment claim. We can assume for the sake of argument that the alleged harassment was of sufficient severity or pervasiveness to establish an actionable claim of racial hostility. See *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1160 (7th Cir. 2014); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Even so, Gosey's inability to point to evidence suggesting that the harassment was based on her race is fatal to her claim. This is so even if we accept her assertion that she was given tasks outside her job description, required to "work off the clock," and disparaged by a supervisor, because she presented no evidence showing that these actions were racially motivated. See *Zayas*, 740 F.3d at 1159 (even under indirect method, evidence of "harassment must be sufficiently connected to race before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's race" (citation omitted)); *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 731–32 (7th Cir. 2009) (same); *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863–64 (7th Cir. 2005) (same).

## C

Finally, we turn to Gosey's contention that the district court erred in granting summary judgment on her claims arising from the termination of her employment. (Although Gosey's opening brief says little about retaliation, Aurora understands

her to be challenging the adverse decision on her retaliation claim as well; Gosey's reply brief confirms that this is correct.) In this court, Aurora makes much of the fact that it also disciplined Gosey for insubordination, but in the district court Aurora insisted that its sole reason for firing her was that she accumulated too many tardies. Its decision must therefore stand or fall on the basis of that explanation.

Among the materials that Aurora submitted in support of its motion for summary judgment were a printout of the entry made in Gosey's electronic personnel file when she was fired and a copy of a provision from the employee handbook stating that employees who are late four more times after being formally warned about tardiness may be fired. The entry in Gosey's personnel file indicates that, after a warning, she was tardy on July 5, July 20, August 17, and October 11, 2010. Aurora produced written warnings given to Gosey for arriving late after the first three of those dates, and the entry documenting the termination of her employment cites the fourth. In the district court the company added that, even if it was wrong about those four days, Gosey had been tardy many more times during the period from April through October 2010, as evidenced by a printout of her computerized "Punch Detail History" for that period.

Gosey did not dispute that she was tardy on July 5, and she stipulated that she had "swiped in" 11 minutes after her scheduled start time on August 17 and one minute after her scheduled start time on October 11. She disputed, however, Aurora's contention that she had arrived 27 minutes late on July 20. Aurora's only evidence of Gosey's tardiness (on that date or any other) is the Punch Detail History. Our

examination of that document reveals that the entry for July 20 shows that Gosey was scheduled to begin work at 5:30 a.m. and that she clocked in at 5:27 a.m.; in other words, she actually was three minutes *early* that day. Likewise, the entry for August 17 shows that she was scheduled to arrive at 5:15 a.m. and was on duty at 5:11 a.m., and so again Aurora's own evidence shows that she was early. The district court noted that Gosey had stipulated that she was late that day, but it apparently recognized that the stipulation was incorrect and disregarded it. Aurora, however, has not let go; it maintains on appeal (in the face of this evidence) that Gosey was tardy on both July 20 and August 17.

Gosey also pointed out that on eight of the other days she supposedly was tardy, her Punch Detail History shows *two* arrival times, one at or before her scheduled start time and the other after. Aurora did not produce evidence that Gosey was responsible for the second, later entry, and Gosey submitted an affidavit attesting that it was impossible for her to "swipe in" to the attendance system a second time. Moreover, Gosey swore that she met Aurora's attendance requirements even on the days when she arrived a few minutes after her scheduled start time. As proof she relied on the deposition testimony of Debra Franckowiak, the hospital's former chief officer of clinical services, who testified that employees in the food-services department were allowed a seven-minute informal grace period at the beginning of a shift. That would mean that on every day when Gosey purportedly was tardy except for July 5, she actually was on time. (It is unclear why Gosey did not dispute being tardy on July 5, since on that day she arrived five minutes after her scheduled start time, well within the

grace period.) Aurora did not contradict Franckowiak's testimony; instead, it fell back on the employee handbook, which defines "tardiness" to mean logging in to "the attendance system after the employee's scheduled start time."

Aurora also attempted to support its motion for summary judgment with evidence that Margaret Muske, the woman hired for the job that Gosey wanted and who became her supervisor, had not been told about Gosey's administrative charge of discrimination before Gosey was fired. Other evidence showed, however, that Franckowiak and Kellie Nelson, Aurora's director of human resources, were both involved in the termination decision and did know that Gosey had submitted a charge of discrimination. All they were able to say was that the administrative complaint did not influence their decision.

The district court concluded that Gosey had shown a material dispute about whether she arrived late on July 20 and August 17, 2010, two of the four days that Aurora cited in firing Gosey. But that dispute did not matter, the court reasoned, because it thought that the uncontested evidence revealed that Gosey had arrived late on four days: July 25, July 27, October 11, and October 15, 2010. Of those four dates, Aurora had cited only October 11 in the electronic entry the company made when it fired Gosey. (The district court's order does not say why July 5, the date Gosey did not dispute, was not being counted against her as a tardy.) The court concluded that Gosey had not rebutted Aurora's proffered, nondiscriminatory reason for discharging her: chronic tardiness. It also agreed with Aurora that the evidence failed to support a finding that Muske knew about Gosey's

administrative complaint before deciding to let her go, and thus that Gosey could not rely on the direct method of proof to establish her claim of retaliation.

To avoid summary judgment, Gosey had to present evidence showing that her discharge was motivated by her race or was in retaliation for her administrative complaint. See *Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 946–47 (7th Cir. 2013), *cert. denied*, 2014 WL 801121 (2014); *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring) ("[T]he plaintiff one way or the other must present evidence showing that … a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason."). Taking the facts in the light most favorable to Gosey, we conclude that she met that burden. By introducing evidence that, if believed by the trier of fact, would show that she was complying with Aurora's attendance requirements, Gosey also satisfied her burden to present evidence that she was meeting Aurora's legitimate employment expectations, that she was similarly situated to all other employees who arrived on time but were not fired, and that Aurora's supposed reason for firing her is pretextual. See *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708–09 (7th Cir. 2011); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 784–85 (7th Cir. 2007). As Aurora appears to recognize, Gosey's claims of discriminatory and retaliatory discharge stand or fall together under the indirect method.

Even if we assume that Gosey was late on July 5, Aurora's own evidence confirms that Gosey was *early* on July 20 and August 17 and that on October 11 she arrived within the grace period that a former management employee said that the

company recognized. On that assumption, a jury could conclude that Gosey was on time three of the four days that Aurora cited as its only basis for ending her employment. On every day that the company says that Gosey was tardy—including July 25, July 27, and October 15—the Punch Detail History shows that she was on the job within the grace period. We cannot, on review of a ruling on summary judgment, assume unfavorably to Gosey that Franckowiak was incorrect about the existence of an informal grace period. As the record stands, Franckowiak's testimony is undisputed by the company, and even if there had been a dispute, the resolution of the disagreement would be for the trier of fact. We must also resolve in Gosey's favor, for present purposes, the dispute over the source of the dual arrival times in the Punch Detail History. Gosey says that she did not make the second, later entry; Aurora made no effort to establish that she did, which raises the inference that the company manipulated the entries.

Given the genuine issues of material fact surrounding Gosey's time records and Aurora's attendance policy, the district court erred in concluding that the reason for Gosey's discharge is beyond dispute. See *Piraino v. Int'l Orientation Res., Inc.*, 84 F.3d 270, 275 (7th Cir. 1996); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1040 (7th Cir. 1993) ("When the existence of a uniform policy or practice is in doubt, it cannot serve as a reason for discharging [an employee]."). Aurora's own evidence, when viewed in the light most favorable to Gosey, shows that she was late at most one time. A trier of fact could thus find that the company's explanation for firing Gosey was not simply mistaken, but false. See *U.S. EEOC v. Target Corp.*,

460 F.3d 946, 960 (7th Cir. 2006) (to survive summary judgment, "the plaintiff must present evidence that supports an inference that the employer was intentionally dishonest when it gave its nondiscriminatory reason for rejecting the applicant"); *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005).

Accordingly, the order granting summary judgment on Gosey's claims of discriminatory and retaliatory discharge is VACATED, and the case is REMANDED for further proceeding on those claims. In all other respects, the judgment is AFFIRMED.