In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-3217

ROCHELLE HAMBRICK,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-00030 — **Thomas M. Durkin**, *Judge.*

———————————

ARGUED JUNE 2, 2023 — DECIDED AUGUST 18, 2023

———————————

Before FLAUM, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Rochelle Hambrick sued her employer, the Social Security Administration (SSA), alleging discrimination, retaliation, and a hostile work environment. The district court granted summary judgment to the SSA on all her claims. Hambrick appeals only the district court's denial of her hostile work environment claim. None of the alleged workplace incidents that Hambrick challenges were severe or

pervasive, nor does she show how they relate to the protected characteristics of her race or age. We therefore affirm.

## I. Background

### A. Factual Background

Hambrick, a black woman born in 1970, has worked at the SSA's Great Lakes Program Service Center in Chicago (Great Lakes) for nearly 35 years.[1] In January 2016, her supervisor reassigned her to the program integrity target and assistance group, a specialized unit known as "PITAG," which handles high-profile and sensitive congressional inquiries. PITAG faced a backlog of 12,000 cases at that time. This occurred, according to Hambrick, because supervisors thought she was not a good fit in her prior group and because she had not trained her staff well. After the transfer Hambrick remained a manager at the same pay scale and grade (GS-13), and she began reporting to Angelo Petros and Rick Lenoir.

Since her 2016 transfer to PITAG, Hambrick alleges she has endured constant negative treatment from her SSA supervisors and peers, amounting to harassment based on her age and race. For example, Hambrick's name did not appear in the PITAG management directory until months after she joined the group. And although she was originally assigned to work in an office, Hambrick was moved to a cubicle. She alleges she was the only manager at her pay scale and grade working in a cubicle.

---

[1] Because this case comes to us after a grant of summary judgment to the SSA, we review the facts in the light most favorable to Hambrick, drawing all inferences in her favor. *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 563 n.1 (7th Cir. 2022).

In support of her claim Hambrick also points to various allegedly harassing emails she received from other SSA managers and employees. She argues these emails undermined her authority and amounted to harassment because the senders could have talked to her in person. Examples include an employee of fellow manager, Bernard Mull, directly emailing a request to one of Hambrick's employees, instead of routing the request through Hambrick, and another Mull employee emailing Hambrick a request and copying some of Hambrick's staff. Mull himself, according to Hambrick, "bombard[ed]" her with emails about her progress on her cases.

After her transfer to PITAG, Hambrick applied for several other roles and development programs at the SSA without success. For instance, in August 2017, Hambrick applied for a Leadership Encouraging Advancement through Development (LEAD) program position, but she was not selected. Her supervisor, Lenoir, instead hired John Bajorek, a younger, white man. Lenoir explained that Hambrick did not get the position because her collaborative skills needed work and because her direct supervisor recommended her "with reservations." In contrast, Bajorek had filled in for Lenoir in the past, had GS-14 level experience, and had high recommendations from his supervisor.

Over the next few years Hambrick applied and was not selected for several positions. These include another LEAD position, and several outside of Great Lakes including three short-term details, two district manager posts, and one assistant district manager post. And she unsuccessfully applied twice for the Filing Information Returns Electronically (FIRE) development program.

In addition to the harassing emails and unsuccessful job applications, Hambrick complains of her supervisors' failure to recognize her accomplishments, her heavy workload, and the quick rise of younger, non-black SSA employees. Hambrick's team received a commissioner's citation for performance, but Hambrick alleges Petros omitted her name from the announcement. She also claims her supervisors did not celebrate her lowering the PITAG backlog of cases from 12,000 to 871. Instead, her supervisors gave her time-consuming assignments, like compiling a spreadsheet of old congressional cases. And her supervisors ignored her nominations of black employees for employee of the month. When Mull took over as Hambrick's first-line supervisor, Lenoir also denied Hambrick's request for a reassignment.

Given her heavy workload, Hambrick takes issue with the performance rating she received in November 2019. She received a "3" out of "5", the lowest of her career. Petros, in explaining the rating, told Hambrick that she was "coasting" and needed to be more open to feedback. Later, at the start of 2020, Petros gave Hambrick an "optional performance discussion" because, he alleged, she had been late to or missed nearly every weekly management meeting over the past few months. Petros also required Hambrick to have weekly workload meetings, which Hambrick believed were accusatory, negative, and harassing.

**B. Procedural Background**

In September 2016, Hambrick contacted an Equal Employment Opportunity counselor and eventually filed an EEO complaint that November. In her complaint she asserted discrimination on the basis of age, citing her involuntary reassignment to PITAG, the allegedly harassing emails she

received, and the promotion of younger, less experienced, white individuals at SSA. She later amended her complaint to include race-based discrimination due to Bajorek's selection to the LEAD program in 2017. The EEO resolved the 2016 complaint in the SSA's favor. Hambrick filed a second EEO complaint in 2020, alleging discrimination based on age and race and in retaliation for protected activity. Specifically, she claimed she had been subjected to a hostile work environment. The EEO issued a final decision in the SSA's favor.

Hambrick then pursued these claims in federal court. The district court analyzed Hambrick's discrimination and hostile work environment claims separately. After examining Hambrick's EEO proceedings, the district court determined that Hambrick had administratively exhausted the following discrete actions: (1) the SSA's failure to promote Hambrick to the 2017 LEAD program by choosing Bajorek instead; (2) Hambrick's lowered performance evaluation in 2019; and (3) Hambrick's non-selection to the FIRE program and district manager positions in 2021 as retaliation for filing her EEO complaints. The court concluded that all three failed to show unlawful discrimination by the SSA. Hambrick does not challenge the district court's grant of summary judgment to the SSA on her discrimination claims.

In evaluating the hostile work environment claim, the district court again identified the incidents Hambrick had administratively exhausted. The court decided it could consider conduct not rising to the level of a discrete act but that it could not consider unexhausted discrete adverse events. So, the district court did not account for any time-barred discrete acts. On the merits, it concluded that the "totality of undisputed facts … consisted of unremarkable workplace

disagreements." Hambrick's "dissatisfaction with her super-
visors, heavy workload, and lack of recognition," did not
create a hostile work environment, and therefore the SSA war-
ranted summary judgment.

## II. Analysis

Hambrick appeals the district court's grant of summary
judgment to the SSA on her hostile work environment claims
under Title VII, 42 U.S.C. § 2000e, and the Age Discrimination
in Employment Act (ADEA), 29 U.S.C. § 623. Summary judg-
ment is appropriate "if the movant shows that there is no gen-
uine dispute as to any material fact and the movant is entitled
to judgment as a matter of law." FED. R. CIV. P. 56(a). In mak-
ing that determination, "[the court] construe[s] all facts and
reasonable inferences in nonmovant [Hambrick's] favor."
*Orozco v. Dart*, 64 F.4th 806, 814 (7th Cir. 2023). We review the
district court's grant of summary judgment de novo. *Wrolstad
v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (citing
*Boston v. U.S. Steel Corp.*, 816 F.3d 455, 462 (7th Cir. 2016)).

"Federal government employees may bring Title VII and
ADEA employment discrimination claims in federal court
only after they have timely exhausted their administrative
remedies." *Formella v. Brennan*, 817 F.3d 503, 510 (7th Cir.
2016) (citing 42 U.S.C. § 2000e-16c). The same procedural reg-
ulations govern both ADEA and Title VII charges. *See Reyn-
olds v. Tangherlini*, 737 F.3d 1093, 1101 (7th Cir. 2013); *see also*
29 C.F.R. §§ 1614.103, 1614.105. To administratively exhaust a
claim, a federal employee must first "obtain EEO counseling
or file an informal complaint within 45 days of the alleged dis-
criminatory action." *Formella*, 817 F.3d at 510 (citing 29 C.F.R.
§ 1614.105(a)(1)). The scope of these administrative proceed-
ings "limits the scope of subsequent civil proceedings in

federal court." *Reynolds*, 737 F.3d at 1099. A plaintiff employee may only bring claims in federal court which were "actually charged in the administrative proceeding" or which are "'like or reasonably related to' the administrative charges." *Id.* at 1102. "To be 'like or reasonably related to' an administrative charge, the relevant claim and the administrative charge must, at minimum, describe the same conduct and implicate the same individuals." *Id.* at 1100 (cleaned up).

A hostile work environment claim is administratively exhausted if "all acts which constitute the claim are part of the same unlawful employment practice and *at least one* act falls within the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (emphasis added). In contrast, claims alleging discrete acts of discrimination must be timely raised during administrative proceedings for a federal court to consider them. *Id.*; *see also Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 850–51 (7th Cir. 2019) ("In *Morgan*, the Supreme Court drew a sharp line between claims for 'discrete' acts of discrimination and hostile work environment claims."). Because Hambrick brings a hostile work environment claim, we examine whether she exhausted at least one act contributing to that claim and then determine which incidents comprise the "same unlawful employment practice." *Morgan*, 536 U.S. at 122.

The district court misjudged which incidents could form the basis for her claim.[2] The court concluded that it could not consider any unexhausted discrete employment acts because it read the Supreme Court's decision in *Morgan* to hold that "discrete acts which are time barred cannot also form the

---

[2] The defendant, to her credit, recognizes this.

basis for a hostile work environment claim." But that deter-
mination differs from a subsequent Supreme Court decision
interpreting *Morgan*. In *Green v. Brennan*, the Supreme Court
explained:

> In *Morgan*, the Court noted that even if a claim
> of discrimination based on a single discrimina-
> tory act is time barred, *that same act could still be
> used as part of the basis for a hostile-work-environ-
> ment claim*, so long as one other act that was part
> of that same hostile-work-environment claim
> occurred within the limitations period.

578 U.S. 547, 562 n.7 (2016) (emphasis added). Therefore, we
can consider, as incidents contributing to a hostile work envi-
ronment, any unexhausted discrete actions that amount to the
same unlawful employment practice.

Hambrick timely exhausted at least one act contributing to
her hostile work environment: her performance review in
2019. She alleges that review contributed to her workplace
hostilities, and she included the incident in her EEO com-
plaint. So, we next consider which of Hambrick's allegations
qualify as the "same unlawful employment practice," *Morgan*,
536 U.S. at 122, as her performance review. Many of Ham-
brick's identified incidents do not relate to one another. For
example, Hambrick's non-selection for positions outside of
Great Lakes from 2018 to 2021 does not relate to her allega-
tions of harassing emails or lack of recognition. Hambrick
does not know who ultimately filled those positions, and
many of those roles involved different decisionmakers. *See
Ford*, 942 F.3d at 853 (explaining that a relevant question for
determining what comprises the "same unlawful employ-
ment practice" is which managers are responsible for the

different acts). But, even considering all the acts Hambrick identified, she still falls short of demonstrating a hostile workplace.

An employer creates a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). To establish such a claim, "a plaintiff must show: (1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 853 (7th Cir. 2023). Several considerations play into whether an environment is hostile: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Casino Queen*, 739 F.3d at 982 (quoting *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691–92 (7th Cir. 2005)). What matters is whether the conduct became so severe or pervasive that "a reasonable person would find [it] hostile or abusive." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).

Nearly all Hambrick's complaints relate to one-time, everyday work disagreements that took place over several years—and none of her complaints, considered in combination, were so severe or pervasive as to "alter the conditions of [Hambrick's] environment." *Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009). For instance, Hambrick complains of personality issues with coworkers and supervisors. Yet

"[i]nsults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance." *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022) (citation omitted). And having supervisors who are "'short tempered,' 'hostile,' unfairly critical, and disrespectful," does not amount to "objectively offensive, severe, or pervasive" conduct. *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018).

Hambrick also takes issue with her heavy workload, management's high expectations, and routine workplace discipline (such as weekly touch point meetings and a discipline meeting for tardiness). But "[n]o reasonable jury could conclude that being assigned duties that were part of one's job description … amount[s] to a hostile work environment." *Hobbs*, 573 F.3d at 464. And administrative annoyances like a lateral relocation without a decrease in pay, reassignment to a cubicle, and being left off the staff directory for a few months do not form the basis for a hostile work environment. *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993) ("'[R]elatively isolated' instances of non-severe misconduct will not support a hostile environment claim." (quoting *Weiss v. Coca-Cola Bottling Co. of Chi.*, 990 F.2d 333, 337 (7th Cir. 1993))).

Moreover, Hambrick fails to show that any of the alleged harassing incidents were "based on membership in a protected class." *Trahanas*, 64 F.4th at 853. Title VII protects federal employees from discrimination based on race. 42 U.S.C. § 2000e-16(a). The ADEA provides that federal employees 40 or older "shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Although Hambrick did not receive a collection of promotions or short-term detail positions, she

has not identified those who were ultimately selected. So, she fails to demonstrate that those denials were discriminatory. She fares no better with her allegations that other younger, white employees quickly rose through the ranks at the SSA.

The closest Hambrick comes to showing discrimination based on race or age is her rejection from the 2017 LEAD position. Construing all facts in her favor, Hambrick was qualified for the position, which the SSA does not contest. But her supervisor Lenoir selected Bajorek, a younger, white man, for the position instead. Yet, Lenoir stated he selected Bajorek over Hambrick for non-discriminatory reasons. Bajorek had filled in for Lenoir in the past, so Lenoir was confident in his management skills and ability to collaborate, and Bajorek came highly recommended by his first-line supervisor. By contrast, Lenoir had concerns about Hambrick's ability to collaborate and manage workflow for others, and Hambrick's supervisor recommended her "with reservations." Hambrick suggests Lenoir fabricated his reasons, but she offers no evidence to support her position.

*          *          *

Hambrick has failed to show she suffered severe or pervasive harassing workplace conduct on account of her race or age, so she cannot succeed on a hostile work environment claim. We therefore Affirm the district court's grant of summary judgment to the SSA.