In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2179

MARY ANN ARNOLD,

*Plaintiff-Appellant,*

*v.*

UNITED AIRLINES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-00405 — **Charles P. Kocoras**, *Judge.*

ARGUED APRIL 10, 2025 — DECIDED JUNE 27, 2025

Before RIPPLE, HAMILTON, and PRYOR, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Mary Ann Arnold brought this action
against her former employer, United Airlines ("United" or
"the Company"), alleging unlawful discrimination and retal-
iation under the Age Discrimination in Employment Act
("ADEA") and the Illinois Human Rights Act ("IHRA").
Ms. Arnold also brought claims of a hostile work environ-
ment and constructive discharge. After discovery, United
filed a motion for summary judgment on all claims. The

district court granted this motion as to the discrimination claim, the retaliation claim, and the hostile work environment claim. The court dismissed the constructive discharge claim without prejudice as unexhausted. For the following reasons, we affirm the judgment of the district court.[1]

# I

## BACKGROUND

### A.

Ms. Arnold worked in communications at United from March 14, 1994, until May 20, 2020. In 2017, she complained to United of age discrimination and of failure to promote because of a disability. Around the same time, she complained that she experienced "retaliation, harassment, a hostile work environment, and denial of equal employment based on age and medical leave/disability."[2] In 2018, she complained to the Company that her supervisor, Jones, had sexually harassed her. She originally submitted the sexual harassment complaint anonymously but then re-submitted it in her own name. United concluded that it could not substantiate her claims and took no disciplinary action against Jones.[3]

Ms. Arnold received her 2018 mid-year review from Jones; he rated her "on track with peers."[4] She is unable to state

---

[1] The district court's jurisdiction was predicated on 28 U.S.C. § 1331 and our jurisdiction is secure under 28 U.S.C. § 1291.

[2] R.44-1 at 74.

[3] Ms. Arnold also filed a complaint with the Illinois Human Rights Commission but later withdrew that complaint.

[4] Plaintiff's Responses to Defendant's 56.1 Statement of Undisputed Material Facts, R.46 ¶ 26.

whether this review took place before or after she made her harassment complaint. During the investigation of the sexual harassment complaint, United placed Ms. Arnold under the supervision of Stephanie Millichap. Millichap wrote Ms. Arnold's 2018 year-end review and her 2019 mid-year review but conferred with Jones when writing the reviews. The reviews contained a mix of positive and critical feedback. Specifically, the 2018 year-end review said that Ms. Arnold should

> take [a] more assertive role and proactively build strategic comms [sic] plans …. You have a passion for making sure the frontline gets what they need to be effective in their jobs, but you need to be proactive in identifying and solving the problems so that our business partners can achieve that goal.[5]

The 2019 mid-year review also noted that Ms. Arnold should work on certain time management skills.

In September 2019, United reorganized its communications functions. As part of this reorganization, the Company moved Ms. Arnold and her team to the Corporate Communications department. United also changed Ms. Arnold's title from Senior Staff Representative to Senior Writer. According to Ms. Arnold, this change altered her role from "project-based" to "data entry" work, resulted in "far less visibility and partner interaction," and greatly increased her workload.[6] The parties agree that "some of Arnold's roles and

---

[5] *Id.* ¶ 24.

[6] Appellant's Br. 6.

responsibilities changed[,] but the basic function of those positions was the same in that they both dealt with internal corporate communications."[7]

United also removed Ms. Arnold from a project called "Core4." The parties dispute whether the project was mostly complete at this point, but Ms. Arnold also submits that this removal "humiliated her and confused her business partners."[8] According to Ms. Arnold, the project was reassigned to two younger employees.[9]

After the reorganization, United initially assigned Ms. Arnold to be seated near Jones. Ms. Arnold maintains that a member of the human resources department declined her request to move and "told her that she could resign and that she should consider whether she wanted to work at United long-term."[10] United disputes the contents of this conversation. Ms. Arnold was eventually moved further away from Jones.[11]

Notably, in October 2019, there was an email exchange among United human relations personnel. The participants discussed a seating change for Ms. Arnold, but there also was mention of offering Ms. Arnold an exit package. Eventually, however, this option was discarded as inappropriate, and the

---

[7] R.46 ¶ 16.

[8] Appellant's Br. 7.

[9] Ms. Arnold's testimony that they were younger is the only evidence in the record regarding the ages of the coworkers, and she does not allege their specific ages. *See* Appellee's Br. 23, R.44-1 at 19.

[10] Appellant's Br. 7–8; *see* R.44-1 at 34–35, 79.

[11] R.44-1 at 76.

participants decided to "focus on performance" in dealing with Ms. Arnold.[12]

In late 2019, Ms. Arnold received her first negative performance review, and she maintains that she was never informed of, or coached, on the mentioned deficiencies before the review.[13] In the evaluation, her supervisors criticized her time and project management. One of her supervisors testified that Ms. Arnold had difficulty meeting deadlines and editing.[14]

After the evaluation, her supervisors placed her on a Performance Improvement Plan ("PIP"). She claims that this PIP "constitutes an adverse action because it worsened Ms. Arnold's employment with its excessive workload, unrealistic deadlines, public criticism, [and] reductive administrative tasks."[15] She also claims that her supervisors "regularly corrected her in front of business partners and United leaders who previously approved and praised her work."[16] She believes that she was generally treated unfairly.

United and Ms. Arnold disagree on whether she successfully completed the PIP. During one of the PIP check-ins, United personnel and Arnold discussed a list of instances of subpar performance that Ms. Arnold has admitted on the

---

[12] R.47-13 at 1.

[13] The parties dispute whether Ms. Arnold had ever been coached on improving these deficiencies.

[14] R.46 ¶ 36.

[15] Appellant's Br. 26.

[16] *Id.* at 10.

record.[17] Ms. Arnold was scheduled to have a final meeting to discuss the PIP in May 2020, but the meeting was rescheduled three times. Ms. Arnold resigned on May 20, 2020, before she had her final PIP meeting. She referred to her resignation as an "involuntary retirement."[18]

In Ms. Arnold's view, the PIP was abusive treatment and United "us[ed] the plan to force her out of the company due to her age and internal and external complaints."[19] She also alleges that J.P., another employee who is approximately six years younger than her, had similar performance issues but received positive reviews and was not placed on a PIP. [20]

**B.**

Ms. Arnold brought this action against United in Illinois state court in 2021. United subsequently removed the case to the United States District Court for the Northern District of

---

[17] On April 23, 2020, Ms. Arnold had a PIP check-in and discussed incidents in which she submitted items incompletely or late, failed to submit items entirely, or submitted items just before the deadline with revisions still required, resulting in late distribution. *Arnold v. United Airlines, Inc.*, No. 22-C-405, 2024 WL 2938843, at *6 (N.D. Ill. June 11, 2024). She also had failed to complete tasks designed to improve her performance, such as making a project tracker, scheduling one-on-one sessions, or identifying training opportunities. *Id.*

[18] R.44-1 at 154.

[19] Appellant's Br. 11.

[20] Before she resigned, Ms. Arnold filed in March 2020, a complaint with the Illinois Department of Human Rights ("IDHR"), alleging a failure to promote due to disability and unequal working conditions based on age. After she resigned, she filled out an IDHR complainant questionnaire in July 2020, claiming that she involuntarily retired due to her mistreatment. Ms. Arnold did not submit this questionnaire to the district court.

Illinois. The district court granted United's motion for summary judgment. The court dismissed Ms. Arnold's age discrimination and retaliation claims. On the age discrimination claim, the court held that United had not subjected her to materially adverse employment actions. In any event, the court continued, the Company had given legitimate, nondiscriminatory reasons for its actions, and Ms. Arnold had failed to establish that these proffered reasons were pretextual. On the retaliation claim, the district court held that only her complaints about age discrimination could be considered as the basis for such a claim and that she had not alleged facts from which a fact-finder could infer intent or causation.

The court also dismissed her hostile work environment claim because she had not submitted evidence to show a sufficiently severe work environment and had not demonstrated causation. Finally, the court dismissed her constructive discharge claim as unexhausted.

## II

## DISCUSSION

We review a district court's grant of summary judgment de novo. *Vassileva v. City of Chicago*, 118 F.4th 869, 873 (7th Cir. 2024). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We construe all facts and draw all reasonable inferences in the nonmoving party's favor, but the moving party may prevail 'by showing an absence of evidence to support' the nonmoving party's claims." *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

**A.**

Ms. Arnold first claims that United subjected her to age discrimination in violation of the ADEA and the IHRA. She submits that the summary judgment record presents a genuine issue of triable fact as to whether United removed her from the Core4 project and placed her on a PIP because of her age. United counters that the record establishes conclusively that the Company removed her from the Core4 project as part of a company-wide reorganization and that it placed her on the PIP because of performance deficiencies. United therefore maintains that summary judgment was correctly granted.

**1.**

We begin our assessment of Ms. Arnold's contentions by setting forth several well-known, basic principles that must guide our inquiry. When considering an ADEA claim at summary judgment, a "court must consider all the evidence in the record to determine 'whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* her age.'" *Vassileva*, 118 F.4th at 873 (quoting *Carson v. Lake County*, 865 F.3d 526, 533 (7th Cir. 2017)). Our case law recognizes two approaches for establishing such discrimination. Under the "holistic" approach, explicitly acknowledged in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), we "look at the evidence in the aggregate to determine whether it allows an inference of prohibited discrimination." *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023). Under the alternate route, a plaintiff can present her case by relying on the burden-shifting framework first enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, the plaintiff first must make out a prima facie case of discrimination by demonstrating that (1) she is a member of the

protected class (people over forty years of age), "(2) she per-formed her job to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) one or more similarly situated individuals outside her protected class received better treatment." *Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022). If the plaintiff successfully meets these requirements, the defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Tyburski*, 964 F.3d at 598 (quoting *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 719–20 (7th Cir. 2018)). If the defendant successfully shoulders that task, the plaintiff must demon-strate that the defendant's proffered reason is pretextual. *Id.* Ms. Arnold attempts to establish discrimination under the *McDonnell Douglas* burden-shifting framework.

**2.**

Ms. Arnold first submits that the district court employed the incorrect definition of an "adverse" employment action, by failing to apply the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). In that decision, the Court held that an employee challenging a transfer under Ti-tle VII must demonstrate "some harm respecting an identifia-ble term or condition of employment." *Id.* at 354–55;[21] *accord Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336–37 (7th Cir. 2024) (explaining the *Muldrow* holding). It is not necessary to meet a "heightened threshold of harm," such as demonstrat-ing "significant harm" or a "materially adverse" action. *Mul-drow*, 601 U.S. at 353 & n.1. Relying on the statutory text, the Court explained that "'[d]iscriminate against' means treat

---

[21] *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), considers the text of Title VII, but the same language is present in the ADEA.

worse … [b]ut neither that phrase nor any other says anything about how much worse." *Id.* at 355. The Court reasoned that adding a heightened requirement of the harm being "significant" or "material" impermissibly added language to the statute. *Id.* at 355, 353 n.1. It explained that "the phrase [terms [or] conditions of employment] circumscribes" which injuries are actionable. *Id.* at 354.

United has a different view. It maintains that *Muldrow* applies only to job transfers. That perspective is precluded, however, by our case law. We already have applied *Muldrow* to situations not involving a transfer. *See Thomas*, 120 F.4th at 1336–37; *see also Phillips v. Baxter*, No. 23-1740, 2024 WL 1795859, at *3 (7th Cir. Apr. 25, 2024) (unpublished).

There is no question that the district court incorrectly applied a pre-*Muldrow* "materially adverse" standard.[22] We must decide, therefore, whether Ms. Arnold can prevail under the more lenient standard of *Muldrow*. Although we have confronted *Muldrow* infrequently, we have applied its new standard by focusing on whether the harm was to "an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355. While the harm need not be "material" or "significant," the harm must affect the "terms or conditions of employment." *Id.* at 355, 353 n.1. In *Thomas*, we considered a Title VII claim of employment discrimination and held that, under the *Muldrow* "some harm" standard, delaying training, denying vacation times, transferring shifts, and considering family circumstances in a biased way are all adverse actions. 120 F.4th at 1336–37. These decisions by the employer adversely affect the terms and conditions of employment because employers

---

[22] *Arnold*, 2024 WL 2938843, at *9.

"must distribute fringe benefits equally" and "[d]eferred training can mean deferred promotions or deferred raises." *Id.* at 1337. By contrast, in *Phillips*, we held, albeit in an unpublished order, that a swapped role that was in the same building and did not affect the employee's "position, job duties, salary, or benefits" was not an adverse action. 2024 WL 1795859 at *3. We further explained that even where there were changes in the employee's duties, those changes were within the scope of his role and were "mostly temporary inconveniences." *Id.*

Other circuits have taken the same approach. The Sixth Circuit explained in *McNeal v. City of Blue Ash*, 117 F.4th 887 (6th Cir. 2024), that "[o]nly discipline causing 'some harm respecting an identifiable term or condition of employment' is actionable on its own." *Id.* at 903 (quoting *Muldrow*, 601 U.S. at 355). In *McNeal*, the employee was disciplined through counseling and reprimands, and the court held that these measures were not actionable themselves. *Id.*; *see also Rios v. Centerra Grp., LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024) ("A mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment.").[23]

---

[23] Additionally, in *Anderson v. Amazon.com, Inc.*, No. 23-cv-8347, 2024 WL 2801986 (S.D.N.Y. May 31, 2024), the court held that the employee's PIP qualified as an adverse employment action under *Muldrow* because it "adversely affected Anderson's benefits, privileges, terms, or conditions of employment by saddling her with more and worse tasks, tarnishing her permanent record, dampening her prospects of a promotion or raise, temporarily preventing her from transferring, excluding her from certain meetings and projects, and so on." *Id.* at *11.

Here, even under the more generous standard of *Muldrow*
and considering the facts in the light most favorable to
Ms. Arnold, she can maintain only that she was placed on a
PIP and that the reorganization brought about some changes
in her daily responsibilities. She remained a member of the
same team and continued to work in the communications de-
partment of United's operation. Her compensation, benefits,
vacation times, and working hours were not affected. Nor did
she provide any evidence that her assignments while on the
PIP were impossible for her to complete. She was given some
additional assignments, and some of her assignments
changed. But these changes were all within the normal scope
of her employment and thus did not adversely affect the
terms and conditions of her employment. The record hardly
describes an adverse action under the standard articulated in
*Muldrow*.

**3.**

Even if Ms. Arnold could establish that United subjected
her to an adverse employment action, she has not shown that
United treated her differently from other employees who
were similarly situated except for age. First, Ms. Arnold com-
pares United's treatment of her to the Company's treatment
of three other employees. She maintains that the Core4 project
was given to two younger coworkers, A.C. and T.S. Her gen-
eral assertion that they were younger is the only evidence in
the record regarding the ages of these coworkers. The record
contains no evidence to indicate whether any difference in age
was sufficient to support an allegation of disparate treatment.
*See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369
(7th Cir. 2019) (granting a motion for summary judgment be-
cause the plaintiff only "speculate[d] that these other

employees were younger than he was, but supplie[d] no information for the court to verify his age relative to theirs").

Moreover, Ms. Arnold did not respond to United's further assertion that these coworkers were not similarly situated because they were on a different team and the teams had different responsibilities. While Ms. Arnold notes that she was in the same department as these employees, she does not dispute that they were on different teams and that the Core4 project was assigned to the two coworkers' team during the reorganization.[24] Whether another employee is "similarly situated" is usually a question for the finder of fact. *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). A valid comparison "normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404–05 (7th Cir. 2007) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)). These factors are not, however, always controlling. We have held that different titles and duties do not necessarily defeat and do not always preclude a finding that the employees are similarly situated. For instance, as we noted in *Coleman*, the violation of a general work rule applicable to all workers at a facility regardless of rank or duties may permit a broader comparison. 667 F.3d at 849. In the present case, however, the dispute is over job responsibilities, and whether Ms. Arnold's coworkers played a different role in United's

---

[24] Appellant's Reply Br. 8. Ms. Arnold cites to an affidavit provided by United that states that she was on a different team from these two coworkers. R.44-5 at 3.

operation is highly relevant. *See id.* Significant differences in job functions would preclude a "meaningful comparison" when attempting to ascertain whether "intentional discrimination was at play." *Id.* at 847 (quoting *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007)). Here, after the reorganization, given the difference in the responsibilities of their teams, Ms. Arnold was not similarly situated to those coworkers.

Ms. Arnold claims that she was treated less favorably than J.P., who is six years younger than Ms. Arnold and allegedly had similar performance problems. We note, however, that a six-year age gap is presumptively insufficient to support a prima facie case under the ADEA. "[T]he prima facie case under the ADEA require[s] a sufficient disparity in ages between the plaintiff and those allegedly favored over her," and we have held that a seven-year age gap was "presumptively insubstantial." *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 892 – 93 (7th Cir. 1997). Because the similarly situated employee proffered by Ms. Arnold is less than seven years younger than her and because Ms. Arnold offers no other evidence to suggest that her or her coworker's age factored into their treatment, she has failed to meet her burden on the fourth prong of the prima facie case.

**4.**

The remaining prong of establishing a prima facie case is whether Ms. Arnold met her employer's legitimate expectations. Ms. Arnold first maintains that, although she was meeting United's performance expectations at the time, she was taken off the Core4 project. United does not contest that Ms. Arnold was meeting the Company's expectations in her work on Core4. It simply explains that the Core4 project was

reassigned to a new team because, at least in the eyes of management, it was largely complete and, as the communications function went through a large reorganization, reassigning the project to a new team was advisable. Although Ms. Arnold has a different view as to the project's stage of maturation, she does not contest seriously that the transfer was part of a wide-ranging reorganization. Her disagreement with management's estimation of the project's stage of development is not, standing alone, enough to demonstrate pretext on the part of United. *Vassileva*, 118 F.4th at 874 ("A plaintiff 'must do more than simply allege that an employer's stated reasons are inaccurate; [she] must still have some circumstances to support an inference that there was an improper motivation proscribed by law.'" (alteration in original) (quoting *Tyburski*, 964 F.3d at 599)).

Ms. Arnold's PIP presents a different situation. In replying to the allegation that the PIP was imposed for discriminatory reasons, United maintains that Ms. Arnold's job performance was deficient. As the district court did, we proceed directly to considering whether United's reasons for instituting the PIP were pretextual. *See Vichio*, 88 F.4th at 691 (allowing courts to "skip the *McDonnell Douglas* prima facie analysis if the employer raises the employee's performance as the reason for the adverse employment decision" and go directly to pretext).

"To establish pretext, an employee must ultimately show by a preponderance of the evidence either '(1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence.'" *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 372 (7th Cir. 1992) (quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991)). Here, Ms. Arnold

submits that that the performance deficiencies cited by United were pretextual and untrue, as she was meeting United's expectations.[25] As she sees things, United "decided to use her performance to push her out of the company."[26] She relies on the emails in which United management decided to "focus on performance" and continue her employment, rather than offer her an exit package.

She submits that United's actions demonstrate that it was not legitimately concerned with her performance because "[h]ad they been concerned, they would have provided coaching and support before the negative review" rather than placing her on an unnecessary and onerous PIP.[27] She argues that she was given many tasks to "ensure she would not complete the plan successfully."[28] She also cites instances where United personnel asked her about her seniority date, and whether working at United "is going to work for you long term."[29]

Notably, Ms. Arnold offers nothing to suggest that her performance did not display the deficiencies claimed by

---

[25] Ms. Arnold contends that she "only received positive performance ratings for years, including mere months before her transfer." Appellant's Br. 23. However, although Ms. Arnold is correct that previous performance evaluations can be considered, "earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken." *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998).

[26] Appellant's Br. 27.

[27] *Id.* at 28.

[28] *Id.*

[29] R.44-1 at 79.

United. The Company's explanation therefore remains unrebutted, and Ms. Arnold has not demonstrated pretext or that she was performing to United's legitimate expectations. Furthermore, the ADEA requires not just "that age was *a* motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009). Ms. Arnold's arguments would require significant speculation and assumption of ulterior motive.

In sum, Ms. Arnold has failed to meet the requirements for making a prima facie case of discrimination under *McDonnell Douglas*. She has not demonstrated that a reasonable factfinder could find that she experienced adverse employment actions, that she was treated worse than similarly situated coworkers, or that she performed to United's expectations. She therefore has not presented a prima facie case of age discrimination, and her discrimination claim cannot survive summary judgment.

**B.**

In the district court, Ms. Arnold claimed that she was subject to unlawful retaliation under the ADEA and the IHRA. On appeal, Ms. Arnold predicates her retaliation claim on both her age discrimination complaint and on her sexual harassment complaint.

"To survive summary judgment on a timely retaliation claim, a plaintiff must offer evidence of: '(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" *Skiba*, 884 F.3d at 718 (quoting *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017)).

**1.**

We first examine whether Ms. Arnold engaged in statutorily protected activity. Here, our evaluation is complicated by Ms. Arnold submitting, *in this appeal*, that the alleged retaliation is predicated both on her age discrimination complaint *and* on her earlier sexual harassment complaint to United. The latter claim—the sexual harassment claim—was never brought in the district court. United takes the view that retaliation based on sexual harassment is therefore not properly before us.

United is correct. First, Ms. Arnold cannot interject into an appeal a ground never relied upon in the district court. The governing rule is straightforward: "[A] party has waived the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). Although Ms. Arnold noted her sexual harassment complaint in her general description of the facts of the case before the district court,[30] she did *not* allege retaliation for making the sexual harassment complaint. Her mere mention of sexual harassment in the prefatory section of the complaint does not allow her to argue, for the first time on appeal, that United subjected her to retaliation because she had made a sexual harassment complaint to the Company. Later on, in the summary judgment

---

[30] Ms. Arnold describes the sexual harassment complaint in the facts section of her amended complaint, R.44-1 at 158, and in the facts section of her response to United's motion for summary judgment, R.45 at 3, 9.

proceedings, she never responded to United's argument that her sexual harassment complaint did not qualify as protected activity in her retaliation claim.

Another well-established rule also bars Ms. Arnold's attempt to interject a retaliation claim based on her sexual harassment complaint. In alleging retaliation for engaging in protected activity, the protected activity must be related to the alleged discrimination. *See Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 658 (7th Cir. 2012). Ms. Arnold's retaliation claim must therefore allege that she objected to discrimination based on age. *See* 29 U.S.C. § 623; *see also McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022) (holding that a retaliation claim failed because the plaintiff did not show that "the substance of [the plaintiff's] complaints implicated her alleged protected class"); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.").

As Ms. Arnold notes, unlike the ADEA, the IHRA does prohibit, among other forms of discrimination, sex discrimination.[31] But she never alleged a sex discrimination claim under that statute in the district court. In Ms. Arnold's amended complaint, she alleged only retaliation for complaints of "age discrimination and harassment."[32] Ms. Arnold later stated in her response to United's motion for summary judgment that her alleged harassment was because of her age. Understandably, the district court took her at her word, and we will not

---

[31] *See* 775 Ill. Comp. Stat. 5/6-101(A)(i); 5/2-102(D).

[32] R.44-1 at 161.

fault it for not teasing out of Ms. Arnold's submissions a valid allegation of sexual harassment.

In sum, Ms. Arnold only alleged age discrimination. Her earlier sexual harassment grievance to the Company therefore does not qualify as protected activity in her retaliation case. Because statutorily protected activity must involve a complaint indicating that "discrimination occurred because of … [a] protected class," Ms. Arnold cannot claim that United retaliated against her because of her claim of sexual harassment. *Skiba*, 884 F.3d at 718 (quoting *Tomanovich*, 457 F.3d at 663). Thus, even if Ms. Arnold had sufficiently made this argument before the district court, her sexual harassment complaint would still not qualify as statutorily protected activity in her age discrimination case.

**2.**

Ms. Arnold also cannot demonstrate, with respect to her retaliation claim, that she has suffered an "adverse action" by United. In the context of retaliation claims, adverse actions are "defined as [actions] 'that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.'" *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911–12 (7th Cir. 2022) (quoting *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016)).

Ms. Arnold submits that "United acted adversely by giving [her] a negative performance review and placing her on a PIP."[33] The district court disagreed and held that this action was not materially adverse. The court was correct. On several occasions, we have held that PIPs and negative performance

---

[33] Appellant's Br. 31.

reviews are generally not materially adverse. *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (collecting cases).

Ms. Arnold submits that this general rule does not govern her case because United implemented the PIP in a manner that had significant adverse impacts on her employment relationship with United. As she sees things, "United drastically increased her workload, imposed unrealistic deadlines, and made her the target of humiliating public correction."[34]

While an employer certainly can implement a PIP in a counter-productive or even a retaliatory manner, this management device, properly administered, is a salutary mentoring tool that can improve employer efficiency and even rescue an underperforming employee on the brink of dismissal. *See Cole v. Illinois*, 562 F.3d 812, 817 (7th Cir. 2009) (affirming that "negative performance evaluations did not constitute materially adverse actions"); *Hambrick v. Kijakazi*, 79 F.4th 835, 843 (7th Cir. 2023) (holding that "heavy workload, management's high expectations, and routine workplace discipline" do not amount to a hostile working environment); *Murphy v. Caterpillar Inc.*, --- F.4th ---, 2025 WL 1702982, at *8—9 (7th Cir. June 18, 2025) ("[The defendant's] decision to place Murphy on a performance action plan—absent any reduction in pay or imposition of other adverse employment conditions—would on its own not be sufficient to establish constructive discharge.").

Certainly, an "adverse action" occurs when an employer sets up an employee "to fail by enforcing department policies against him in an unreasonable manner." *Lang v. Illinois Dep't*

---

[34] *Id.* at 31–32.

*of Child. & Fam. Servs.*, 361 F.3d 416, 420 (7th Cir. 2004). In *Lang*, the employer made it impossible for the employee to fulfill his duties by refusing to approve actions necessary to the job and by requiring approval by unavailable people. *Id. Lang* does not govern here. Ms. Arnold has not carried her burden of establishing such an oppressive and unrealistic situation. The record evidence reveals nothing more than the pressure any reasonable person would experience during a period of scrutiny by a superior in the work environment. *Cf. Murphy*, 2025 WL 1702982, at *8—9 (holding employee constructively discharged when he was placed on a performance action plan that imposed a deadline that had already passed).

In sum, the district court correctly held that Ms. Arnold's sexual harassment complaint to United cannot support her retaliation claim in this action predicated on a violation of the ADEA. Nor can Ms. Arnold's negative performance review and placement on a PIP constitute materially adverse actions. Accordingly, we affirm the district court's dismissal of her retaliation claim.

## C.

Ms. Arnold next claims a hostile work environment. "To establish a hostile work environment claim, a plaintiff must show: (1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Trahanas v. Nw. Univ.*, 64 F.4th 842, 853 (7th Cir. 2023). We may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alexander v. Casino*

*Queen*, 739 F.3d 972, 982 (7th Cir. 2014) (quoting *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005)).

Ms. Arnold did not make a hostile work environment claim based on sexual harassment in her complaint and therefore cannot present that argument for the first time on appeal. *See Fednav Int'l. Ltd.*, 624 F.3d at 841. Moreover, in arguing that she was subjected to such a hostile work environment, she primarily relies upon evidence that she was forced to sit near the supervisor she previously had accused of sexual harassment. The record makes clear, however, that after she complained about her seating, Ms. Arnold's superiors found a place for her away from that supervisor.[35] She also contends that the performance plan created a hostile work environment, but the record simply cannot support her contention. *Hambrick*, 79 F.4th at 843.

Finally, we note that Ms. Arnold cannot, on this record, plausibly claim harassment based on age.

**Conclusion**

The judgment of the district court is affirmed.[36]

AFFIRMED

---

[35] R.44-1 at 76.

[36] Ms. Arnold seeks review of the district court's decision on her constructive discharge claim. In the district court, United asserted that Ms. Arnold failed to exhaust the claim with the EEOC, but she did not respond to this defense. The district court then held that she had waived the constructive discharge claim by failing to respond adequately. Ms. Arnold now claims ( … continued)

that the district court erred in dismissing this claim without prejudice and further argues that her claim is meritorious. Because Ms. Arnold failed to contest United's assertion that this claim was unexhausted, the district court properly dismissed the claim without prejudice. *McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022).